## Case No. 9,579.

### MILLER v. LERCH.

[1 Wall. Jr. 210.] [1]

Circuit Court, Third Circuit. Oct., 1848.

RELIGIOUS SOCIETIES—INCORPORATION—POWER TO HOLD IN TRUST—BEQUEST TO CHARITABLE USES.

A religious corporation, created under the act of April 6, 1781, of the Pennsylvania legislature, can be a trustee for the heir at law of the testator, who devised certain lands to it in trust for uses that were void. The statute of mortmain, 9 Geo. II. c. 39, has never been in force in Pennsylvania.

[Cited in De Camp v. Dobbins, 31 N. J. Eq. 691.]

Peter Miller of Easton, devised an estate of about $300,000 to two church corporations of that town, upon certain trusts which his heir at law, the present plaintiff, contended were void, but which the corporations asserted were charitable uses, and as such entitled to the protection given to that class of gifts. A large part of the devise was real estate, which the present action—one of ejectment—was brought to recover. The question was, whether admitting the trusts to be void, the plaintiff had such a legal title as would enable him to recover here in ejectment. In other words, whether the legal title was not in the corporations, and whether the remedy of the heir was not by bill in equity on the other side of this court. Both corporations were created under an act of legislature, April 6, 1791 (3 Smith's Laws, 20), which, with a supplement, em-

---

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

powered them to "take, receive and hold all and all manner of land, &c., to be employed and disposed of according to the objects, articles, and conditions" of their charters, "provided that the clear yearly value or income of the messuages, &c." did not exceed $2000. The charters gave no express power to hold lands in trust for purposes not within the scope of their objects.

J. M. Porter and M. H. Jones, in support of the action.

If the legal title is out of the heir and in the corporations, it can be there for one of two purposes alone; that is to say, either for the use of the corporations themselves; or in trust for the heir at law. Certainly the corporations do not hold for themselves. The statutes of mortmain apply to Pennsylvania corporations, whatever counsel (Vidal v. Girard, 2 How. [43 U. S.] 127) may have said arguendo. The judges of the supreme court of this state, in their report upon the English statutes in force here (3 Bin. 626) Dec. 14th, 1808, say that these acts "are so far in force, that all conveyances either by deed or will, of lands, tenements or hereditaments, made to a body corporate, or for the use of a body corporate are void, unless sanctioned by charter or act of assembly." And the legislature of the state declared the law to be the same way, twenty-five years afterwards in the preamble to one of its statutes. Act April 6th, 1833. The enacting part of the statute, it is true, had reference to a particular matter, but the general and then existing law of the commonwealth is explicitly and intelligently declared in this preamble;—a preamble that would operate not only as a declaration of the then existing law, but if necessary as an adoption of the statutes of mortmain, so far as any thing but enactment can adopt them. "Whereas it is contrary," says this act, "to the laws and policy of the state, for any corporation to prevent or impede the circulation of landed property from man to man, without a license from the commonwealth, and no corporation, either of this state or of any other state, though lawfully incorporated or constituted, can in any case, purchase lands within this state, either in its corporate name, or names of any person or persons whomsoever for its use, directly or indirectly, without incurring the forfeiture of said lands to this commonwealth, unless said purchase be sanctioned and authorized by an act of the legislature thereof; but every such corporation, its feoffee or feoffees, hold and retain the same, subject to be divested or dispossessed at any time by the commonwealth according to due course of law," &c. Indeed the act "enabling religious societies of Protestants within this province to purchase lands," (Act Feb. 6, 1730–31, 1 Smith's Laws, 192), was necessary to counteract the operations of these statutes. But that act never went further than to enable those societies to take sites for churches, houses of religious worship, schools, almshouses, and for burying grounds. And though the act under which these corporations are created, allows them to hold lands to a larger extent, yet it does not enable them to take such a vast estate as is here devised; the yearly value of which is far above $2,000. Neither can the corporations be trustees for the heir. Indeed, as is well known, it was formerly doubted whether a corporation could be a trustee for any purpose; whether it could be seized to any use and convey by bargain and sale; and though the modern doctrine is, that a corporation may be a trustee for some purposes, that is to say, for purposes within its scope, it has never been held that a corporation can be seized of a bare legal estate to hold in trust for a purpose no way connected within its scope,—which is foreign from its purpose—and which arises only in consequence of the uses being void for which the property was conveyed. The uses are void: The devise is void; and the heir takes directly. He has, we think, the legal title and, of course, can maintain ejectment.

Mr. Sergeant and Mr. Bayard on the other side were relieved by the court, after merely stating their points.

GRIER, Circuit Justice. In England, under the statute of 9 Geo. II. c. 36,[2] when lands are devised to a charity, the trust not only is itself void, but it vitiates the devise of the legal estate on which it was engrafted. And therefore in such cases the heir may recover at law, except where there are other trusts not charitable, which, of course, would entitle the trustees to retain the estate, and oblige the heir to prosecute his claim in equity. Jarm. Wills, 200. But this statute, which is usually, though rather inaccurately, called the "statute of mortmain," was never adopted in Pennsylvania, nor is there to be found any similar provision in her own legislation. It is, however, by virtue of this statute alone, and not by any principle of the common law or provision of earlier statutes, that courts of law in England treat the devise or gift as void, and permit the heir to recover in them. Doe v. Wrighte, 2 Barn. & Ald. 710. I am aware that the judges of the supreme court of Pennsylvania, in their report upon the English statutes in force in Pennsylvania, make the following remarks: "There are several statutes called statutes of mortmain, one of which (the statute de religiosis) was passed in the 7th year of Edward I. (statute

---

[2] This statute enacts (section 1) that no manors, lands, &c., nor money, &c., shall be given, &c., to charitable uses, unless by deed indented and executed before two witnesses, 12 months before the death of the donor, executed with certain formalities, and by § 3, that gifts, &c. "made in any other manner or form . . . shall be absolutely, and to all intents and purposes, null and void."

the 2d); another in the 13th year of Edward I. (chapter 32); another in the 15th year of Richard II. (chapter 5); and another in the 23d year of Henry VIII. (chapter 10). These statutes are, in part, inapplicable to this country, and, in part, applicable and in force. They are so far in force that all conveyances either by deed or will, of lands, tenements or hereditaments made to a body corporate or for the use of a body corporate, are void, unless sanctioned by charter or act of assembly. So also are all such conveyances void made either to an individual or to any number of persons associated but not incorporated, if the said conveyances are for uses or purposes of a superstitious nature, and not calculated to promote objects of charity." 3 Bin. 626.

How far this report may be entitled to consideration as a judicial authority, it is not necessary for me to consider; for the assertion that deeds and wills of land made to a body corporate are void, has long been admitted to be a mistake. Indeed, I fully concur with those who refuse to admit that any of the English statutes of mortmain have, or ever had, any operation in Pennsylvania. They were mere statutes of policy, in contravention of the common law, and were passed to prevent the king and mesne lords from being deprived of their feudal and seignoral rights accruing by prerogative and tenure. Some of them were aimed avowedly at the Roman Catholick religion. Our tenures of land subject them to none of those feudal burthens from which they escape by alienation to a corporation, and which, for this reason, were called alienations in mortmain, or dead hand. Lands held by corporations may, in general, be aliened and taxed as lands held by natural persons are; and the state loses none of her prerogatives over them, except the possible chance of an escheat or collateral inheritance tax. They are, therefore, not properly in mortmain as regards the prerogative of the state as superior lord. And how can the terms "superstitious" be predicated of any religion in this state? whose constitution acknowledges no church as orthodox, and holds all sects and all religions entitled not merely to toleration, but to equal protection? But it is not necessary for the court here to affirm or to deny any speculative doctrine on this subject. It has been examined with great learning and ability by my predecessor, the late Hon. Henry Baldwin, in his opinion in Magill v. Brown [Case No. 8,952] (the case of Sarah Zane's will), decided in 1833, and more recently by Horace Binney, Esquire, in his argument at Washington, in Vidal v. Philadelphia [Id. 16,939]; both printed in pamphlet form. To those documents I would refer the persons who take an interest in the inquiry.

It is enough for the purposes of the present case that these statutes would not make void a conveyance in mortmain, but only expose the land to forfeiture by the entry of the commonwealth. It is therefore a doctrine well settled in Pennsylvania, that a corporation has a right to purchase, hold and convey lands in this state without a license, until some act is done by the government, according to its own laws, to vest the estate in itself. The fact, therefore, that the license contained in the acts of incorporation limits the income of these corporations to $2,000, cannot affect the present question, as it does not avoid the devise in consequence of its being beyond the limits of the license. The legal estate passes by the gift or devise to the corporation, and is defeasible by the commonwealth alone. Leazure v. Hillegas, 7 Serg. & R. 313; Runnion v. Costar, 14 Pet. [39 U. S.] 122. The remedy therefore of the plaintiff should be by bill in equity, and not by ejectment. If, on the hearing of the case in equity, the court should be of opinion that the trusts limited on this devise are such as a chancellor would not execute, it will treat the devisees as trustees for the heirs at law or next of kin, and decree a conveyance of the legal estate to them. Judgment accordingly.