IN THE

# COURT OF ERRORS AND APPEALS

## OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### NOVEMBER TERM, 1879.

WILLIAM SCOTT DE CAMP

*v.*

EDWARD L. DOBBINS and others, executors.

| 31 | 671 |
|----|-----|
| 54 | 6 |

| 31 | 671 |
|----|-----|
| 55 | 205 |

| 31 | 671 |
|----|-----|
| 61L | 413 |

| 31 | 671 |
|----|-----|
| 62 | 220 |

| 31 | 671 |
|----|-----|
| 64 | 8 |

1. If a testamentary trust is limited to a purpose inconsistent with the statutory policy of the state, the heir at law has a right, in equity, to contest the execution of such trust.

2. This is not of that class of cases in which the public alone can intervene.

3. The word "benevolent," intrinsically considered, includes more than legal charities, but its signification may be narrowed by the context.

4. Where the will limited the trust to a church "to aid the missionary, educational and *benevolent* enterprises to which the church is in the habit of contributing," and it was shown the enterprises referred to were legal charities,—*Held*, that the word "benevolent" could not, in this text, have a signification wider than the word "charitable," and, consequently, the trust was valid.

On appeal from a decree of the chancellor, reported in *De Camp* v. *Dobbins, 2 Stew. 36*

De Camp v. Dobbins.

Mrs. E. A. Crane, by her will, after certain devises and legacies, made the following disposition:

"The residue of my estate I give and devise to the North Reformed Church of Newark, in trust that they may use the same to promote the religious interests of the said church and to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing, and I direct my trustee and executors to pass over to the officers of the said church, all property, either real or personal, remaining after satisfying the above-named bequests, and it is my wish that the said church officials shall use and dispose of the said property at such times and in such manner as they shall deem expedient to promote the above-named interests, not holding the said property, however, unexpended or unappropriated for a longer period of time than ten or fifteen years."

It was shown that the residue of the estate would consist of real estate in this state, or the proceeds of the sale thereof. It also appeared that, at the time the will went into force, this church held property the annual value of which was equal to $2,000.

*Mr. Jacob Vanatta*, for appellant.

I. The gift is not to the church for its own use.

The will says the gift is "in trust." This excludes the corporation from having any beneficial interest. If it can

NOTE.—In *Morgan* v. *Taylor, Wright 144*, it was held that the legislature could change the tenure of lands previously conveyed to a religious society; and that the term "society," in a statute providing that each society could take and hold only twenty acres of land, meant each congregation or particular church as distinguished from a general denomination. See *Ayres* v. *Methodist Church, 3 Sandf. 351.*

In *Cruse* v. *Axtell, 50 Ind. 49*, a devise of realty and personalty to a Masonic organization, "for the purpose of building a Masonic lodge," was held valid, although the value of the devise far exceeded the limit as to property fixed by statute in regard to such corporations.

In *Baker* v. *Clark Inst., 110 Mass. 88*, a charitable corporation was by law authorized to hold $200,000 worth of property. A testator, in his life-time, gave it $50,000, and by his will directed his executors to hold his residuary estate until it amounted to $200,000, and then to pay it to the same corporation. At the time of his death the residue amounted to $140,000, but, owing to debts &c., his estate could not be settled for two years, at which time the residue exceeded $200,000. Meanwhile the capacity of the corporation had been largely increased

De Camp v. Dobbins.

take, it cannot take or hold as owner. *1 H. L. Cas. 272; Lewin on Trusts 15.*

II. Independent of the rules governing "charities," the trust sought to be created by the residuary clause is void.

(*a*) Because the trustee named in the clause in question has no legal power to take or hold the estates devised and bequeathed. *Phelps* v. *Pond, 23 N. Y. 77.*

(*b*) Because the uses, by reason of indefiniteness and uncertainty, are incapable of execution.

As to the trustee: To constitute a valid use, there must be, in all cases, first, a trustee legally competent to take and hold the property; and, secondly, a use for some purpose clearly defined. *Owens* v. *Missionary Society &c., 14 N. Y. 406; Corporation of Gloucester* v. *Osborn, 1 H. L. Cas. 283; Beekman* v. *Boncer, 23 N. Y. 310.*

The society now claiming as devisee is not the one named in the residuary clause. They say that is a misnomer, and that they are the person intended. But they must make that apparent by proof, and no proof upon the point has been given. *Ang. & Ames on Corp.* §§ *99, 185; Inhabitants &c.* v. *String, 5 Hal. 323.*

The corporate defendant is the creature of the statute (*Nix. Dig. 802*), and it cannot have or exercise any powers

by statute.—*Held,* that it took the residue; also, *Att'y-Gen.* v. *Clergy Soc., 10 Rich. Eq. 604.*

In *Miller* v. *Chittenden, 2 Iowa 315,* a statute limiting the quantity and value of lands to be held by religious societies, was passed in 1843. In 1844, another act was passed restricting only the *purposes* for which such lands should be used.—*Held,* that a devise of lands "for the use and benefit of the First Congregational church," without designating any particular purpose to which it was to be applied, the quantity being in excess of the limit of 1843, if made in 1846, was good.

In *Brunnenmeyer* v. *Buhre, 32 Ill. 183,* a declaration of such purposes in a deed of lands to trustees of a society incorporated under the statute, was held unnecessary.

In *Chamberlain* v. *Chamberlain, 43 N. Y. 424,* an act limited to $4,000 the annual income of any incorporated academy. By a subsequent statute, trusts were authorized to be created for the benefit of any incorporated college or other literary incorporated institution &c., without any limit as to the amount or value of such trust fund.—*Held,* that a bequest to an academy of a fund which annually produced more

except such as are expressly, or by necessary implication, conferred upon it. *Bank of Augusta* v. *Earle, 13 Pet. 519; Black* v. *Del. & R. C. Co., 9 C. E. Gr. 474; State* v. *City of Elizabeth, 4 Dutch. 103; State* v. *Newark, 2 Dutch. 519; Trenton Mut. Life Ins. Co.* v. *McKelway, 1 Beas. 133.*

The corporation cannot take as proprietor *sui juris*, but only in trust, and but for one *cestui que trust*, " the said congregation." This is the power given, and all that is given. And all powers not given are excluded *expressio unius est exclusio alterius. Broom's Legal Maxims 505, 515; Vesey* v. *Jamson, 1 Sim. & Stu. 69.*

The third section of the " act concerning corporations " (*Nix. Dig. 168*), which applies to ecclesiastical as well as to lay corporations, declares that " no corporation shall possess or exercise any corporate powers except such as shall be necessary to the exercise of the power so enumerated and given." *1 Perry on Trusts § 43; In re Howe, 1 Paige 214.*

In *Trustees of Phillips Academy* v. *King, 12 Mass. 546*, it was held that an aggregate corporation is capable of taking and holding property, as a trustee, for religious uses, but in that case the corporation had express and full legislative authority to do so. *Ang. & Ames on Corp. §§ 166–169, 220; 2 Kent Com. 279, 280; Vidal* v. *Girard's ex'rs, 2 How. 127; Green* v. *Dennis, 6 Conn. 293; First Parish in Sutton* v. *Cole,*

than $4,000 was void, as to the excess. See *Tucker* v. *St. Clement's Church, 3 Sandf. 242, 8 N. Y. 558; Williams* v. *Williams, '8 N. Y. 525, 4 Denio 542.*

In *Bogardus* v. *Trinity Church, 4 Sandf. Ch. 633, 758*, where a gift at the time did not exceed the statutory limit, a subsequent increase in value of the property, far beyond such limit, was held not to justify a forfeiture of the charter; also, *Humbert* v. *Trinity Church, 24 Wend. 630; Att'y-Gen.* v. *Grocers Co., 6 Beav. 526.*

In *Cromie* v. *Louisville Soc., 3 Bush 365*, a devise of lands in Kentucky to a corporation of New York, exceeding the quantity that such corporation could, by the laws of New York, hold, was, as to the excess, held void. See *Starkweather* v. *Amer. Bible Soc., 72 Ill. 50; Fellows* v. *Miner, 119 Mass. 541.*

In *Ticknor's Estate, 13 Mich. 44*, a bequest was made to a corporation (by name, but not, in fact, then incorporated) of New York.—*Held*, valid, notwithstanding a statute of Michigan provided that no corporation for religious purposes should be recognized as existing by the

De Camp v. Dobbins.

*3 Pick. 237; Theological Seminary of Auburn* v. *Cole, 18 Barb. 360; Brewster* v. *McCall, 15 Conn. 274; Furgeson* v. *Hedges, 1 Harring. 524; State* v. *Wiltbank, 2 Harring. 18; State* v. *Walter, 2 Id. 151; 1 Perry on Trusts § 43; Tucker* v. *St. Clement's Church, 3 Sandf. 242; In re Howe, 1 Paige 214.*

"The amount to which the corporation is entitled is such a sum as will yield, at seven per cent., an amount which, with any income from any other property now owned by the legatee, will give a yearly income of $2,000, and this can be ascertained by a referee." *Chamberlain* v. *Chamberlain, 43 N. Y. 439, 440; Wetmore* v. *Parker, 52 N. Y. 460.* Such was the rule followed under the English poor laws, where taking a lease of a tenement of "the yearly value of £10" gained a settlement. *4 Burns's Justice 386; Parish of South Sydinham and Lamerton, 1 Str. 57.*

The act of 1872 does not at all apply to personal estate, nor does it authorize ecclesiastical corporations to receive lands by devise, or gift, but only by compact, that is by "purchase," using that word in the popular and not in the technical sense. *Jackson* v *Hammond, 2 Cai. Cas. 337; Ayers* v. *Methodist Church, 3 Sandf. 351.*

The act of 1872, in express words, or by implication, does not repeal or alter the limitation contained in the 13th section of the act of 1846. The two can stand together

common law, the canon law or by prescription, or in any other manner, except by express statute of Michigan.

In *American Bible Soc.* v. *Marshall, 15 Ohio St.* 537, a statute of New York, providing that no devise of real estate to a corporation should be valid unless such corporation be expressly authorized by its charter or by statute, to take by devise, was held not to prevent a corporation of New York, not possessing the statutory requisites, from taking lands in Ohio; also, *Thompson* v. *Swoope, 24 Pa. St. 474.*

In *Vansant* v. *Roberts, 3 Md. 119*, by the Maryland bill of rights, every devise to or for the support, use or benefit of any minister &c., or any religious sect &c., without leave of the legislature, is void.—*Held,* not to apply to a bequest of personalty to a Pennsylvania corporation. See, also, *Amer. Tract Soc.* v. *Purdy, 3 Houst. 625; Amer. Bible Soc.* v. *Noble, 11 Rich. Eq. 156; Seaburn* v. *Seaburn, 15 Gratt. 423; Evangelical Ass'n Appeal, 35 Pa. St. 316; Silcox* v. *Harper, 32 Ga. 640.*

In *Rainey* v. *Laing, 58 Barb. 453; 489*, in a suit by executors, for the construction of a will, in which the heirs at law and next of kin

De Camp v. Dobbins.

and, therefore, there is no repeal of the limitation. *Chamberlain* v. *Chamberlain, 43 N. Y. 424, 437.*

Having then, as I humbly conceive, established that the trustees named in the will can neither take nor hold the property in question, what consequences ensue? It is said that a trust shall never fail for the want of a trustee, and, to prevent the failure of a trust, the court will appoint a trustee. *Perry on Trusts §§ 38, 45.* But there are exceptions to this rule. There are cases where no trustee, but the one named in the deed or will, *can* execute it. There are cases where the trustees are to act for the donor in exercising a special discretion—as, for instance, selecting and appointing the objects of the donor's bounty and discretionarily apportioning the bounty between the selected beneficiaries. *Fountain* v. *Ravenal, 17 How. 369.*

Because the trustee cannot *take or hold,* the title is in the heir, and Grover holds but as a trustee for the heir. How can the heir's title be divested? Not by the North Reformed Church, because it has not the power or capacity to *take or hold.* There is no way except at the suit of the supposed *cestuis que trust,* or some of them. But, as we shall hereafter see, they cannot be ascertained, or, if they can, they have no power or capacity to take. *Beekman* v. *Boncer, 23 N. Y. 298, 311; Gower* v. *Mainewaring, 2 Ves. 87, 110; Widmore* v. *Woodruff, Amb. 636; Brown* v. *Higgs,*

claimed that the gifts to a corporation were void, because such gifts exceeded the capacity of the corporation to take, it was held that that question could not be raised in such a suit, but only in a direct proceeding by the state.

Although a charter cannot be attacked collaterally (*Ref. Pres. Church of N. Y., 7 How. Pr. 474*), and only directly by the state (*Runyan* v. *Coster, 14 Pet. 122; Banks* v. *Poitiaux, 3 Rand. 136; Baird* v. *Bank of Washington, 11 Serg. & Rawle 411; Goundie* v. *Northampton Co., 7 Pa. St. 233; Wade* v. *Amer. Col. Soc., 7 Sm. & Marsh. 665; Chambers* v. *Baptist Soc., 1 B. Mon. 216; Consistory &c. v. Brandon, 52 Barb. 228*), yet heirs, devisees and next of kin have been held competent to question gifts to corporations unable to take and hold them (*State* v. *Wiltbank, 2 Harring. 18, 23; Harris* v. *Slaght, 46 Barb. 470, 2 Abb. Dec. 316; Trustees* v. *Dickenson, 1 Dev. 189; Barton* v. *King, 41 Miss. 288; Goddard* v. *Pomeroy, 36 Barb. 546; Ayres* v. *Methodist Church, 3 Sandf. 351; Ruth* v. *Oberbrunner, 40 Wis. 238*).—REP.

*4 Ves. 708, 718, 719 ; Hill on Trustees, 70, 480; Fower* v. *Garlike, 1 Russ. & Myl. 232, 8 L. J. Ch. 66.* If they cannot exercise that power, nobody else can, because the *discretion* was intended to be vested in them and in no one else. The power, in its nature, is not delegatable. The will gives no power of substitution, and no power to assign the power of appointment. *Lewin on Trusts, 266, 267, 290 ; Mortimer* v. *Ireland, 6 Hare 196.*

III. The uses are so indefinite and uncertain that they cannot be enforced, and, hence, are void, and if the defendant corporation has taken, it holds but as a trustee for the heirs at law and next of kin.

The gift is " to the North Reformed Church of Newark, *in trust* that it" (*i. e.*, said church—not the congregation, but the corporation) " may use the same to promote," (1st) " the religious interests of the said church," and (2d) " to aid the missionary, educational and benevolent enterprises to which *the said church* is in the habit of contributing."

Then there are directions: " I direct my trustee and executors to pass over to the officers of the said church," (I assume, as agents of and for the corporation) " all property, either real or personal, remaining after satisfying the above-named bequests." Then, as to the use, after the property is passed over: " It is my wish that the said church officials " (the direction is to officers as officers, and not to individuals, *N. Y. Inst. for Blind* v. *How, 10 N. Y. 84; Bailey* v. *Onondaga Co. Mut. Ins. Co., 6 Hill 476 ; Chamberlain* v. *Chamberlain, 43 N. Y. 437*) "shall use and dispose of the said property" how ? (1st) "At such *times* and in such *manner* as *they* shall deem expedient to promote the above-named interests"—but there is a limitation as to time, viz. : (2d) " Not holding the said property, however, unexpended or unappropriated for a longer period of time than ten or fifteen years."

The use secondly declared, is to aid enterprises to which *the said church* has been a contributor.

De Camp *v.* Dobbins.

Preliminarily, I will remark, that the statute of charitable uses (*43 Eliz. ch. 4*), if ever adopted in this state, was repealed. *Pat. 1799, p. 436 § 4; R. L. p. 726 § 2.* This latter act was repealed in 1846. *R. S. p. 684,* ¶ *102 § 1.* But the effect of that was not to revive the English act. See *Id. p. 710 § 5 ; Norris* v. *Thomson, 4 C. E. Gr. 312.*

Independent of that statute, the rule at law and in equity was and is, that a gift or devise for a purpose or object so vague and indefinite that a court of equity could not enforce it, was void. *Morrice* v. *The Bishop of Durham, 9 Ves. 405 ; 1 Perry on Trusts § 253 ; Lily* v. *Hey, 1 Hare 580 ; Ommaney* v. *Butcher, 1 Turn. & Russ. 250 ; Att'y-Gen.* v. *Sibthorp, 2 Russ. & Myl. 107.* See illustrating cases stated in *Lewin on Trusts, 169–170,* and in *2 Roper on Legacies, 1237 ; Hurland* v. *Trigg, 1 Bro. C. C. 142 ; Meredith* v. *Henage, 1 Sim. 542 ; Sale* v. *Moore, Id. 534; Williams* v. *Kershaw, 5 Cl. & Fin. 111.*

A gift for purposes of *benevolence* is not a charity, and cannot be executed as such. Where the will is so framed that the trustees, if they see fit, may bestow it all upon purposes which, *in law*, are not charitable, the bequest is wholly void. All benevolent enterprises are not what the law esteems charitable enterprises. *Norris* v. *Thomson, 4 C. E. Gr. 307 ; S. C., 5 C. E. Gr. 489, 522 ; Morrice* v. *Bishop of Durham, 10 Ves. 521; James* v. *Allen, 3 Meriv. 17 ; Ommaney* v. *Butcher, 1 Turn. & Russ. 260* (there the residue was to be given in private charity); *Vezey* v. *Jamson, 1 Sim. & Stu. 69; Brown* v. *Teale, 7 Ves. 50, note ; Fowler* v. *Garlike, 1 Russ. & Myl. 232 ; Thompson* v. *Shakespeare, 1 De G. F. & J. 399 ; Ellis* v. *Selby, 7 Sim. 352 ; Owen* v. *Missionary Soc., 14 N. Y. 380, 409 ; Bascom* v. *Albertson, 34 N. Y. 584.* This overrules *Williams* v. *Williams, 4 Seld. 525.* The reasoning in *34 N. Y.* seems conclusive, and should be followed in this state. *Rose* v. *The Rose Benevolent Ass'n, 2 Dwight's Arg't 7, 8; 28 N. Y. 184; 34 N. Y. 590 ; Wheeler* v. *Smith, 9 How. (U. S.) 55.*

De Camp *v.* Dobbins.

The case of the *Att'y-Gen.* v. *City of London, 3 Bro. C. C. 171*, establishes no contrary rule. There the will directed the residue to be laid out for *charitable* and other pious and good uses—but *recommended* that the greater part should be employed for the advancement of the christian religion among infidels. A part of the fund was transferred by the trustees to the College of William and Mary, in Virginia, that the college *should maintain and educate*, in the christian religion, so many Indian children as the fund would sustain. In 1790, by order, the English court of chancery took away that support, on the ground that since the independence of the United States the court could not control the college. If the Indians had been the *cestuis que trust*, the fund could not have been withdrawn. The testator made no bequest to any mission. Primarily, the Indian children were the beneficiaries of the trustees by the sufferance of the court. This was when they were in a British colony. But this case is instructive and deserves more consideration. It shows that a court of equity cannot and will not execute a charity where the *cestuis que trust* reside in a foreign country, and are citizens of a foreign government. During the course of the argument, Lord Chancellor Thurlow said: " With respect to the college" (William and Mary, in Virginia), " suppose they should misbehave, where is the *scire facias* to be brought?" He decreed that the charity must be applied *de novo*, and that the master must propose a plan for the application of the produce of the estates.

*Doe* v. *Copestake, 6 East 328*, shows that in England the gifts in this case would probably be regarded as superstitious and therefore void. *Shelford on Mortmain, 88–116 ; De Themmines* v. *De Bonneval, 5 Russ. 288*.

Judge Selden, in *Owen* v. *Missionary Soc., 14 N. Y. 387*, correctly pointed out that the jurisdiction of the court of chancery in England, in relation to charities, was derived from three sources: First—From its ordinary jurisdiction over trusts. Second—From the prerogative of the crown.

Third—From the statute of *43 Eliz. ch. 4.* See *Fountain* v. *Ravenal, 17 How. 384.*

The second and third of these sources do not exist here. The royal prerogative was not invoked except where the case was not within the law as to ordinary trusts, *i. e.*, where the trust would fail but for the interposition of the royal prerogative. The executive and judicial powers of the British government are united and exclusively vested in the king. By his prerogative, he is the universal occupant, and entitled to

(1) All derelict lands, whether made so by forfeiture, escheat, or otherwise.

(2) To the beds and shores of seas and navigable rivers, and other rights therein.

(3) To swans and royal fishes.

(4) To beacons and light-houses.

(5) To wrecks.

(6) To certain mines and rights of coining money.

(7) To derelict goods, including waifs, estrays and treasure trove, and

(8) To fines and forfeitures.

If those powers of the crown devolved upon the people of this state at the revolution (but most of them were annihilated), they have not been conferred upon this court by the constitution or any statute of this state. This court has only judicial power. *17 How. 391; Bac. Abr., Prerogative, D. 5; Story's Eq. Plead. § 8.* The preamble of *43 Eliz. ch. 4,* stated that lands &c. " have been heretofore given, limited, appointed and assigned," and the act directed inquiry to be made " of all and singular such giftes, limitations, assignments and appoyntments &c." As shown by Judge Selden, upon the foundation of these two words, " limitations " and " appoyntments," many strange, capricious and arbitrary decisions were made. *14 N. Y., 400–409.* The *cy pres* power, as applied to charity cases in England, has never been exercised in this state. We have none of the commissions, nor other machinery, statutory and prerogative,

De Camp *v.* Dobbins.

necessary to its exercise. It is not only without precedent, but without warrant or authority here. *Beekman* v. *Bonsor, 23 N. Y. 298; Bascomb* v. *Alderson, 34 N. Y. 594; Phelps* v. *Pond, 23 N. Y. 69–77; Owen* v. *Missionary &c., 14 N. Y. 400; Fountain* v. *Ravenal, 17 How. 369–386, 391, Taney, C. J.; Wheeler* v. *Smith, 9 How. 55*

To recapitulate :

1st. The defendant corporation cannot take or hold *sui juris,* nor as trustee, for the uses mentioned in the residuary clause of the will.

2d. The court cannot select the objects of the trust, nor appoint a trustee for that purpose, with power to do it.

3d. The objects of the testatrix's bounty are so indefinite and uncertain that no one can execute the will, and for all these reasons the residuary clause is void, and the property must go to the heirs and next of kin.

*Mr. F. T. Frelinghuysen,* for respondents.

I. The devise considered as a general or private trust without the aid of the law applicable to trusts to charitable uses.

First—It is claimed the devise fails, because there is no such church as the "North Reformed Church of Newark." The name by which the corporation is in common parlance known, will be sufficient to sustain the gift or devise. *Provost &c. of Oxford* v. *Sutton, 12 Sim. 521.* That there is no other corporation of "like name," or "more nearly answering to the words," nor a corporation that might in any way be distinguished by the name set out in the will, will be sufficient. *Bradshaw* v. *Thompson, 2 You. & Coll. 295; Wilson* v. *Squire, 1 You. & Coll. 654; Smith* v. *Bergen, 5 Jur. (N. S.) 905.* A mistake in the name or description of a devisee, will not make void the devise when the intention of the testator is clear, as, when the devisees were called by their popular name, "the South Parish of S.,"

De Camp *v.* Dobbins.

their legal name being "the First Parish in S." *Inhabitants of First Parish in S.* v. *Cole, 3 Pick. 232.*

Second—It is claimed that the North Reformed Dutch Church has not the capacity to accept the trust, because, as alleged, it has no power to take or hold property, excepting in a manner and to an amount specified in its charter, and that, as alleged, is only to be " in trust for the use of said congregation," and " to an amount in value not exceeding two thousand dollars a year;" and that, as this trust is not for the use of the congregation, but to promote the religious interests of the church, and to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing, and as the corporation, at the death of the testatrix, held property in excess of the amount limited, it has no capacity to take the trust, and that to take it would be *ultra vires;* that this assumption of the corporation the heirs at law of Mr. Crane can avail themselves of, and that as equity, as claimed, could not appoint a new trustee, for the reason that discretion is reposed by the will in the particular trustee named, that, therefore, the devise is void, and Mrs. Crane died intestate, and her collaterals take the property.

I submit that not one item of the complainant's proposition can be maintained.

1. The ministers, elders and deacons of the North Reformed Dutch Church, have the capacity to accept the trust. *Angell & Ames, p. 110 ch. 5; Dyer 100a pl. 70,* cited as good law by Lord Kenyon, *2 T. R. 672; Society &c.* v. *Pawlet, 4 Pet. 480; Town Conservators* v. *Ash, 10 B. & C. 349; Bridgewater Canal Co.* v. *Blewett, Id. 393.*

A corporation, too, can, at common law, acquire property by devise. *2 Atk. 37.* In the charter of the North Reformed Dutch Church there is no statutory restriction. The statute of mortmain exists in Pennsylvania. *1 Watts 218.* It has been discussed whether the statute was in force in other states. *McCartee* v. *Orphan Asylum Society, 9 Cow. 452; Lathrop* v. *Com. Bank of Sciota, 8 Dana 119.*

De Camp *v.* Dobbins.

2. Neither is the North Reformed Dutch Church incapacitated from taking or holding the property devised by the will, because it, at the death of the testatrix, held property in trust for the use of the congregation, of more than the yearly value of $2,000. The money given to aid the missionary, educational and benevolent enterprises, and to promote the religious interests of the congregation, is not " for the use of the congregation" in any sense. It is the very opposite; it is for matters divorced from and superior to the temporalities of the congregation. *Nassau Bank* v. *Brown, 3 Stew. 478; State* v. *Conkling, 19 Cal. 501; Gorham* v. *Luckett, 6 B. Mon. 146.*

Where the second act *in pari materia* imposes different penalties, it repeals the former by implication. *Sedgwick on Construction, 100n; U. S.* v. *Tyner, 11 Wall. 38.* A statute is impliedly repealed by a subsequent one revising the whole subject matter of the first. *Bartlett* v. *King, 12 Mass. 537; Nichols* v. *Squier, 5 Pick. 167; Commonwealth* v. *Kelliher, 12 Allen 480.*

But if there is any doubt as to the capacity of the N. R. Dutch Church to take property otherwise than in trust, and for a limited amount, for the congregation, the doubt is removed by the act of April 4th, 1872 (*P. L. 1872 p. 101*). It is a devise of real estate that is here in question.

" To *use* land does not require the actual personal occupancy thereof by the devisee. Taking the rents and profits and applying them to certain purposes, is *using* the land for that purpose." *U. S.* v. *Dickson, 15 Pet. 141.*

(*a*) Of trusts in general it was formerly held that corporations could not be trustees. Such is not now the law. *2 Kent Com. 226,* says that corporations, on account of the peculiar structure and perpetual succession, seem to be proper and safe depositaries of trusts. *Sonley* v. *Clock Makers' Co., 1 Bro. C. C. 81.*

(*b*) The object of the trust is not foreign, but is germane to the purposes of the corporation.

De Camp v. Dobbins.

3. But the heirs of Mrs. Crane cannot raise the question whether the North Reformed Dutch Church exceeded its powers in accepting the trust. *Vidal* v. *Girard*, *2 How. 189; East Archipelago Co.* v. *Reg.*, *2 E. & B. 875.*

The legislature may waive a forfeiture. *15 N. H. 162; 9 Wend. 351.* The corporation does not, because its limit is full, cease, *ipso facto*, to be a person capable of receiving more. It has the capacity to receive until the state acts. *5 Duer 676.* If the state does not insist on its restrictions, the title of the corporation, by lapse of time, becomes perfect. *Harpending* v. *Dutch Church*, *16 Pet. 455; Baker* v. *Clark Institute*, *110 Mass. 88; Ang. & Ames § 777; 2 Washb. Real Property*, *(2d ed.) 567.* The estate of the corporation in the lands or in the excess is not divested. *Humbert* v. *Trinity Church*, *24 Wend. 587; Bogardus* v. *Trinity Church*, *4 Sandf. Ch. 633; Harvard College* v. *Aldermen of Boston*, *104 Mass. 70; Attorney* v. *Bowyer*, *3 Ves. 727.* Heirs cannot contest the right of a corporation to take property or to execute trusts. *Vidal* v. *Phila.*, *2 How. 191; Wade* v. *American Colonization Society*, *7 Sm. & Marsh. 663.*

Third—It is claimed that the uses are so indefinite and uncertain, that they cannot be enforced, and hence are void, and that if the North Reformed Dutch Church has taken, it holds but as a trustee for the heirs at law and next of kin.

I submit that the devise, as a general or private trust, is not uncertain or void.

II. The devise considered as a trust to charitable uses.

(a) The law of charities is in force, in the federal courts of the United States and in New Jersey.

In England, long before 1601, when the statute of charitable uses was enacted (*43 Eliz. ch. 4*), the court of chancery, under its original jurisdiction over matters of trust and confidence, administered charities. *Vidal* v. *Girard*, *2 How. 127; Going* v. *Emery*, *16 Pick. 107; Norris* v. *Thomson*, *4 C. E. Gr. 307; Hendrickson* v. *Decow*, *Sax. 577; Att'y-Gen. ex rel. Bailey* v. *Moore*, *4 C. E. Gr. 503; Thomson* v. *Norris*, *5 C. E. Gr. 522.*

De Camp *v.* Dobbins.

(*b*) That law is such, that if the trust in question be one to charitable uses, the case is relieved from all question as to the capacity of the North Reformed Church to accept the trust. *2 Story Com. (2d ed.) 415*, §§ *1169, 1170; Vidal* v. *Girard, 4 Pet. 179.* Even a grant to an unincorporated association, in trust for a charitable purpose, is sustained in equity. The court will appoint a new trustee. *Perry on Trusts § 46.* Also, *Hamblett* v. *Bennett, 6 Allen 140.* Where a literal execution becomes inexpedient or impracticable, the court will execute it as nearly as it can, according to the original purpose, or (as the technical expression is) *cy pres. Story Com.* § *1169; Att'y-Gen.* v. *Oglander, 3 Bro. C. C. 166; Att'y-Gen.* v. *Green, 2 Bro. C. C. 492; Frier* v. *Peacock, Finch 245; Baptist Association* v. *Hart's ex'rs, 4 Wheat. 1; Inglis* v. *Trustees Snug Harbor, 3 Pet. 99.* A court of chancery will aid a defective conveyance of legal charitable uses. *In re Christ Church, Cambridge, 1 W. Bl. 90.*

(*c*) The trust in question is one to charitable uses.

The case of *Thomson's ex'rs* v. *Norris* is relied on as authority against the validity of the devise in question. Chancellor Zabriskie's opinion is found in *4 C. E. Gr. 308*, and the opinion of this court in *5 C. E. Gr. 521.* The case was this: Mr. Thomson's will declared, as to certain accumulated income of the estate, that the testator's widow "shall be authorized and empowered by her last will and testament to give and devise the same among such benevolent, religious or charitable institutions as she may think proper." There was a considerable accumulation of income, and the widow and the brother and three sisters of the testator concluded that, because the widow might give the fund to a benevolent institution which was not a charitable institution, if one could have been found, the devise was not legal; and that, to avoid this illegality, she would take two-thirds of the fund, and the brother and sisters would take the other third, and an agreement was made between them to that effect. The legislature being the sovereign guardian of public charities thereto empowered, passed an act approving and confirming this agreement, and the suit

was brought that the executors might have a judicial sanction for giving up the fund. If the legislature had authority to pass the act, there was really no question before the court, and even if the legislature had not authority to settle the question, the court would be inclined to favor a family settlement that had commended itself to a co-ordinate branch of the government. Many of the cases cited by Chancellor Zabriskie fall short of sustaining his decision. Thus, in *Morrice* v. *Bishop of Durham, 9 Ves. 404,* the trust was " for such objects of benevolence and liberality as the bishop, in his own discretion, shall most approve." In *James* v. *Allen, 3 Mer. 17,* the trust was "for such benevolent purposes as the trustees might agree upon." In *Ellis* v. *Selby, 7 Sim. 352,* the trust was to charitable or other purposes. In *Kendall* v. *Grange, 5 Beav. 300,* the trust was for the relief of domestic distress, assisting indigent but deserving persons (Lord Langdale, master of the rolls, says that, if the sentence had ended here, I should have held it a good charity, but the testator says further), or to encourage undertakings of general utility. In *Vezey* v. *Jamson, 1 Sim. & Stu. 69,* the trust was for charitable or public uses or otherwise.

This court relies much upon the case of *Williams* v. *Kershaw, 5 Cl. & Fin. 111,* where the trust was for "such benevolent, charitable and religious purposes &c." The master of the rolls first made "and" to mean "or," then held that, as the trustees might devote the fund to benevolent purposes which were not charitable, therefore the trust was void. *2 Boyle on Charities 281, ch. 5.*

In the case of *Thomson* v. *Norris,* the word "institutions" seems to strengthen the position that the trust was one to charitable uses—the words are "benevolent, religious or charitable institutions." I can conceive of no benevolent institution that could have been in the mind of the testator that was not also a charitable institution. The court refers to the case of *Babb* v. *Reed, 5 Rawle 151,* as an instance of a benevolent institution which was not an association for

De Camp *v.* Dobbins.

charitable uses.   That association being in debt, claimed
the benefit of the law of charitable uses to make it a *quasi*-
corporation, so as to give relief from personal liability; the
court said it was an association restricted to the mutual aid
of a few, and not for the relief, in any shape, of the com-
munity; that it was an associating together as partners, the
same as individuals associate for the purposes of banking,
and that they were not entitled to the benefit of the law of
charitable uses, but were jointly and severally liable.   It
was no more a benevolent than it was a charitable institu-
tion, and no more either than is the Newark Mutual Benefit
Life Insurance Company.

This case is very different from *Thomson* v. *Norris*.   The
trust is " to promote the religious interests of the church,
and to aid the missionary, educational and benevolent enter-
prises to which the said church is in the habit of contribu-
ting."   Gifts for the advancement, spread and learning of
christianity, or for the support of worship, have, ever since
the statute of *43 Eliz.*, been held charitable.   *Jackson* v.
*Phillips, 14 Allen 552*.   So, to promote the religious interests
of said church, is a charitable use.   A trust in aid of foreign
missions is a charitable use.   *Bartlett* v. *King, 12 Mass. 537;*
*Fairbanks* v. *Lawson, 99 Mass. 533*.

The counsel of complainants states that foreign missions
are not within the letter or the spirit of the statute of *43
Eliz.*, and refers us to *2 Story Com.* § *1164*, which reads
thus:   " But there are certain uses which, though not
within the letter, are yet deemed charitable within the
equity of the statute.   Such is money given to maintain a
preaching minister; to maintain a school-master in a
parish."   For educational purposes is a charitable use.
*Swasey* v. *Am. Bible Soc. 57 Me. 527; Tainter* v. *Clark, 5
Allen 66*.   For benevolent purposes, is a charitable use.
*Saltonstall* v. *Saunders, 11 Allen 468; Shaw* v. *Wilson, 9 Cl. &
Fin. 355*, at page 390, refers to *Att'y-Gen.* v. *Pierson, 3 Mer.
353; Craigallie* v. *Aikman, 1 Dow 1*.   When the trustee or
*cestui que trust* is uncertain, or if the trust is in doubtful

De Camp *v.* Dobbins.

words, the court will have recourse to extrinsic circumstances. *9 Cl. & Fin. 355, 383.*

Again, the character of the devisee indicates the character of the devise. *Magill* v. *Brown, Bright. 437 ; Bice* v. *Maxwell, 28 Pa. St. 23.*

The case at bar is this : A member of a christian church devises to it property to be used to promote the religious interests of the said church, and to aid its missionary, educational and benevolent enterprises. I submit that each of these is a charitable purpose ; that a " benevolent" purpose, to be effectuated by a christian church as trustees, is held to be a " charitable purpose," and the word " benevolent," when associated with the words " educational and missionary," is to be rendered, as they are, as meaning " charitable," which is one of its true significations; and further, when you add to the words " missionary, educational and benevolent enterprises" the words " to which the said church is in the habit of contributing," and those enterprises are charitable, that the trust is a trust in behalf of charities, and cannot be declared void.

The opinion of the court was delivered by

BEASLEY, C. J.

In this case, there are but two objections to the effectuation of that clause in this will which is contested, that seem to me to require discussion. The first of these raises the question, whether or not this religious corporation, the North Reformed Dutch Church of Newark, can legally take the testamentary donation in question, in view of the restrictions contained in the law creating it; and the second is, whether this testamentary provision creates a valid charitable use ?

With respect to the first point: The contention of the counsel of the appellants, on this branch of the case, is, that this corporation cannot take the benefit of this trust without violating a restrictive provision of its own charter. The fol-

De Camp v. Dobbins.

lowing are the circumstances relied on to justify this conclu-
sion: The North Reformed Dutch Church of Newark was
organized by force of the act entitled " An act to incorporate
trustees of religious societies," passed April 17th, 1846 (*Nix.
Dig. 802*), which, in section 11, constitutes the minister,
elders and deacons of every Reformed Dutch congregation
trustees of the same, and a body politic and corporate in
law; and, in section 13, enables such trustees to acquire,
purchase, receive, have and hold any lands, tenements, here-
ditaments, legacies, donations, moneys, goods and chattels, in
trust, for the use of the said congregation, to any amount in
value not exceeding $2,000 a year &c.

At the time this will went into operation, this church, it
is admitted, was possessed of its complement of property
which this law authorized, for such property was in value
at least $2,000 a year.

From these facts it is urged that, as the testamentary
clause in question empowered the trustees, in their discre-
tion, to use the fund bequeathed, to promote the religious
interests of the church, it was, in substance and effect, an
illegal addition to their property, so that, if the trust was
effectuated, the statute would be violated. It will be
observed, that the first power that the will gives over the
trust fund is, that the trustees of the church " may use the
same to promote the religious interests of the said church,"
and it is insisted that, by force of such provision, they may,
if they see fit, apply the whole fund to the same uses to
which they devote the property they are authorized by law
to hold. It is said, they may devote this fund to the sup-
port of their minister, or to any of the other ordinary
expenses of the establishment, and that such an appropria-
tion will be plainly a compliance with the limitations of
the will.

In order to treat this argument with fairness and to give
its full force, it should be remembered that these proprie-
tary restrictions imposed by this law upon these religious
corporations, had a meaning of their own, and were evi-

De Camp v. Dobbins.

dently political in their character. They are the latest manifestations of that dread of property being held in mortmain, and that jealousy of ecclesiastical encroachment and monopoly, which so perseveringly has exhibited itself in English and American legislation. At all events, it is clear that it was a part of the legislative policy of this state that this class of corporations should not be the possessors of property beyond the fixed measure. The force of the argument, therefore, that we are now considering, lies in the circumstance that, assuming these to be the only facts in the case, to permit this trust to be executed is to permit this policy to be infringed. It is certainly no answer to this view to say, that if this church has not capacity to receive and execute this trust, that the bequest, being a charity, does not fail, but, in such event, the court will appoint another trustee to support and execute it. Such an answer seems to me to be founded on a misapprehension of the point of the objection, which is not that the trustee is too feeble to hold the trust, but that the purpose of the trust is illegal. When the object of a trust is to violate the policy of the law, a court of equity, in a case proper for its action, will not permit it to be executed by any hand whatever.

Nor can I assent to the other proposition, that if, as the contention assumes, this bequest is violative of the law if carried into effect, that none but the state can intervene. I find no warrant for such a doctrine, either in the legal principles belonging to the subject or in the adjudications. There can be no doubt that there are cases in which, when a corporation has acquired rights of property to an extent or in a manner unwarranted by its charter, no one but the public can have the right to complain. A grantor making title to a corporation might be estopped from questioning the effect of his own conveyance. So, a mere stranger could not question such a corporate title. But I have not observed any decision that asserts, when a title is created by devise which vests in a corporation, for its own use, a larger quantity of property than the laws authorize, that the heir at law has no

De Camp v. Dobbins.

right to make objection. The authorities referred to do not lend countenance to such a doctrine. Thus, in the case of *Bogardus* v. *Trinity Church, 4 Sandf. Ch. 633*, a stranger attempted to attack the title of the corporation on the ground of a usurpation by such corporation; and *Runyan* v. *Coster's lessees* was a case following the case of *Leazre* v *Hillegas, 7 Serg. & Rawle 313*, in which the question was, whether a corporation taking a title in a manner repugnant to the limitations of its charter, could pass a legal title to its grantee, and it was held that it could do so, subject to the right of the state to avoid such an estate.

These cases rest on the obvious principle that the capacity of the corporate body to become the grantee in the given case, cannot be challenged by a party who does not stand in a position to raise the question. In such a position, it would be true that the state alone could object to such corporate act. But such instances are to be discriminated from that other class, where the corporation claims to take and hold by devise, in contravention of law, and the heir of the devisor is the party complaining. In this latter situation, the doctrine enforced in the cases cited does not apply. In this connection, the case of *Miller* v. *Lerch, 1 Wall. Jr. 210*, is apposite. The facts of that case were essentially similar to those now under judgment, so far as relates to this particular point; there was a devise of an estate of over $300,000 to two church corporations which had been created under a statute giving to each the right to receive and hold property, provided it did not exceed the clear yearly value or income of $2,000; the heir at law brought ejectment, and was defeated, on the ground that, by force of certain statutes of that state, the title at law passed to the corporations, but, so far was Mr. Justice Grier (who presided) from asserting that the heir at law had not the right to draw the title in question, that he said: "The remedy, therefore, of the plaintiff should be by a bill in equity, and not by ejectment. If, on the hearing of the cause in equity, the court should be of opinion that the trusts limited in this

devise are such as the chancellor could not execute, it will treat the devisees as trustees of the heirs at law or next of kin, and decree a conveyance of the legal estate to them." The distinction is, that when the trust itself is unexceptionable, the legal incapacity of the designated trustee to hold and execute the trust, will afford no ground for declaring the limitation void ,but will lead merely to the substitution of a proper trustee, by the court having the appropriate jurisdiction. But when the complaint is made by the heir at law, before the proper tribunal, that the devise is illegal in its nature, and cannot be lawfully executed by any trustee, I think no well-considered case can be found denying his right to raise up the dispute touching such devise. Indeed, this was, in truth, the attitude of the heirs at law in the great controversy relating to the Girard will; their position being, that the testamentary dispositions then drawn in question, were opposed to certain essential principles of state policy, and, on that account, were void ; and no one questioned their right to intervene, or pretended that, on such an issue, the public alone could challenge the title of the city. Mr. Perry, in his well-digested work on Trusts (*Vol. 1* § *160*), correctly lays down the legal principle on this subject. He says, that where a gift is made upon trusts that are void, in whole or in part, for illegality, a trust will result to the donor, his heirs or legal representatives, and, as illustrations from adjudged cases, he instances the example of a trust which is void by statute, as a disposition in favor of persons or objects prohibited from taking, or where the gift contravenes some policy of the law, as tending to a perpetuity. The recent case of *Luckraft* v. *Pridham, L. R. (6 Ch. Div.) 205*, is illustrative of the same principle, and *Bridges* v. *Pleasants, 4 Ired. Eq. 26*, may be specially referred to in this connection.

I have already said that, in the present case, the gist of the objection is, not that this corporation cannot take and hold against the objections of any one but the state, even if, in so doing, it transcends its legal capacity, but that this

De Camp *v.* Dobbins.

testamentary disposition itself is illegal, and can not be executed lawfully by any trustee whatever, being opposed to a principle of civil policy established by legislation. I have no doubt that the heir at law has a standing in court to raise such a contention, and that, in a court of equity, he would be entitled to prevail if he could succeed in establishing the proposition on which such defence rests.

But I have concluded that there is another element in this case, that strips the foregoing contention of all its legal force, and that is, that by the act of 1872 (*Rev. p. 959*, § *8*), the capacity of this corporation to acquire property is greatly enlarged, and, in one direction, is made unlimited. The act referred to, and which was in force when the testatrix died, declares that " it shall be lawful for any religious society in this state, however incorporated, to purchase and hold, and also to convey and dispose of, any real estate which they may deem necessary and expedient; provided that the same shall not be used by the religious corporation acquiring the same, for any other purpose than the rendering and maintaining, in any building now or hereafter erected upon such real estate, the worship of Almighty God, and the furtherance of religion according to the tenets and forms of worship of the religious denomination to which such religious society belongs, or for the education or the administration of charity to the bodies or souls of men."

Here, it will be perceived, is a plain grant of authority given to these corporations to purchase and hold all such land as they may deem expedient, as the sites of buildings, to be devoted to the specified uses. There is no restriction on the quantity or value of lands that may be so purchased and held, and the consequence is, that the receptivity of the corporation, with respect to property, is practically unrestricted, provided, in the limitation of such property to such corporation, it is not specially appropriated to purposes other than those designated in the statute. Thus, therefore, if a gift should be made to one of these corporations having its complement of property to the annual value of

De Camp *v.* Dobbins.

$2,000, of the further sum of $5,000 to be employed for the support of the minister, such a gift would be in contravention of the laws above referred to, because this addition to the corporate funds could be used only for the purpose specified, and such purpose is not one of the uses designated in the act of 1872. But if such gift should be bestowed in general terms for the uses of such corporation, then it is plain such gift is not inconsistent with any of the provisions of these statutes, inasmuch as such gift may be devoted to a use sanctioned by them.

The rule I consider quite unquestionable, that whenever there is a corporate capacity to receive donations for particular uses, a donation in general terms to such corporation will be valid, as the law will infer that the purpose of the donor was lawful, and that it was his intention that his gift should be appropriated to some of the legitimate uses. In the present case, these trustees can, by force of the legislation just recited, lawfully apply this whole fund in the purchase of a site of a church school-house, and such use of the trust moneys would be within both the statutory and the testamentary limitations. Such being the case, it is plain that such gift cannot be said to be in violation of such statute. I can, therefore, perceive nothing illegal in the first clause of this trust that authorizes these trustees to use this fund, if they see fit so to do, " to promote the religious interests of the said church."

It remains to consider the second objection : It will be remembered that the limitation is to use the fund " to promote the religious interests of the said church, and to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing," and it is urged, that this entire trust cannot be said to be charitable, within the legal signification of that term, inasmuch as the word " benevolent," by its natural force, takes in objects and purposes that are not charities. That this term has this latitudinarian meaning, was, upon full consideration, decided by this court in the case of *Norris* v. *Thomson's ex'rs, 5 C. E.*

De Camp *v.* Dobbins.

*Gr. 489.* That exposition went on the ground of the intrinsic meaning, and the unchecked form, of the term, for on that occasion it was considered that there was nothing present tending to hem in or narrow its import. As the word "benevolent" is admittedly broader in its meaning than the word "charitable" in its technical sense, I am unable to comprehend how the decision in question could have been other than it is, unless upon the inadmissible assumption that, when there is no guide to the testator's intention but his language, the court is possessed of the arbitrary power of altering such language. It will be found, I think, in almost all the decisions, that when these expressions have been taken in any sense but the technical or popular sense respectively, there has been something in the context justifying the particular interpretation.

I do not think much of precedents in such a matter, for in the multitude of cases that, in a general way, illustrate the subject, scarcely two can be found that are identical in circumstance and expression, and unless two cases are identical in such particulars, the one can have but little bearing on the other in point of authority. The general rules of construction appear to me to be the best criteria on these occasions, and one of the most important of such rules is that, when the terms of such a limitation as this, in view of the whole instrument, have a clear meaning, judicial astuteness, employed either to uphold or suppress the instrument, is quite out of place. In the absence of any criterion but the naked signification of the terms themselves, a court, in my opinion, can no more say that benevolence has the import of charity, and nothing more, because in some of their senses the two words assimilate, than it would be legitimate to adjudge that the number five means four because the two numbers are but a single remove from each other. Nor can I go with that process of reasoning that concludes that when the word "benevolent" is conjoined to the word "charitable," the two words become identical in meaning, as that implies that one of the terms is to be dispensed with, or

45

De Camp *v.* Dobbins.

that the lesser term swallows up the larger one. The fact is, in such connection, there is nothing incongruous, nor is there even a shade of uncertainty in the meaning of the words; and, in such a naked case as I have supposed, for the court to strike out the broader of the descriptive terms, may indeed uphold, now and then, a testamentary limitation, but at the same time one of the most important canons that the law has established for the construction of written instruments, is impaired. But, as I regard this point as entirely settled by the decision of this court in the case just noticed, I shall not further pursue the subject.

But accepting in its full force, as I do, this principle of construction, I have altogether failed to see how it is to be applied so as to make it of much importance in the present case. In this will, the words in question do not depend on their intrinsic qualities alone for their signification. The facts shown, clearly demonstrate the sense in which the testatrix used these terms. It does not seem to me that the matter has been left in the least uncertainty. It appears in the case, by the proofs, that this church has been in the habit of making donations to certain enterprises and objects, such as the foreign and domestic missions, the bible society &c., all of which enterprises are charities in the legal sense of the term. When, therefore, this will declares the trust, and directs the property to be used "to aid the missionary, educational and benevolent enterprises to which the *said church is in the habit of contributing,*" the will itself provides a standard by which the word "benevolent" is to be measured. The fund is not to be used to aid any benevolent enterprise, but only benevolent enterprises of a certain defined character, and they are charities. The word "benevolent" is thus, by the context and the subject matter, cut down into legal dimensions. From the first, I have seen no difficulty on this point.

I shall vote to affirm the decree.

Decree unanimously affirmed.