CHARLES HYDE'S EXECUTORS

*v.*

ELIZABETH HYDE et al.

[Submitted October 10th, 1902. Filed December 8th, 1902.]

*Testator devised and bequeathed to his executors the residue of his estate in trust,* among other things, "to give and distribute one hundred thousand dollars thereof, within five years from the date of my death, for such religious, charitable or educational or other purposes as they may deem advisable, provided, nevertheless, that no portion thereof shall be given to or distributed among his wife or children, individually or collectively." —*Held,* (1) that by the true construction of the language used by testator to express his intent, the trustees were permitted to devote the sum named to purposes other than those which are religious, charitable or educational, *and therefore to other than charitable uses;* and (2) that although by such construction the testamentary disposition of the $100,000 fails and that sum will thereby go to testator's widow and children, an intent to limit the trustees in disposing of that sum to uses which are charitable but other than religious or educational, is not discoverable in the proviso that no part of the sum should be given or distributed to his widow or children, or any of them.

*Mr. Charles A. Reed,* for the complainants.

*The Attorney-General, pro se.*

MAGIE, CHANCELLOR.

The bill in this cause was filed by Elizabeth Hyde, Charles L. Hyde, Louis K. Hyde, Francis de L. Hyde and Edith L. Hyde, executors of the last will and testament of Charles Hyde. The defendants to the bill as filed were the same persons in their individual capacities.

The purpose of the bill was to obtain a construction of the fourth paragraph of the will of said deceased, which, so far as necessary for the present purpose, is expressed in the following language:

"*Fourth.* All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever situate, I give, devise and bequeath to my executors hereinafter named, and to the survivors and survivor of them, in trust, nevertheless for the following uses and purposes:

"1. To give and distribute one hundred thousand dollars thereof, within five years from the date of my death, for such religious, charitable or educational or other purposes as they may deem advisable, provided, nevertheless, that no portion thereof shall be given to or distributed among my wife or children, individually or collectively.

"2. To apportion, divide and distribute all the balance of said rest, residue and remainder among my widow and my heirs-at-law and next of kin in the same manner and proportions as said widow and next of kin would be entitled to and would take the same under the laws of descent and distribution in vogue and force in the State of New Jersey, at the time of my death in case I had died intestate."

The claim made by the bill is that the disposition of the sum of $100,000 directed in the first subdivision of the fourth section of said will is void for uncertainty, and that said sum therefore falls into the residue of the estate and should be distributed according to the provisions of the same section respecting the distribution of the "balance" of the residue. The prayer of the bill is that it should be determined whether the disposition of the $100,000 is void, and if void, what should be done with said sum by the executors.

The defendants, in their individual capacity, entered an appearance in the cause, and filed an answer admitting the facts charged and joining in the application for a judicial determination of the question presented by the bill.

The cause was set down for hearing and admitted upon a brief filed by counsel for complainants.

Upon examination of the case thus presented, it was apparent that it radically differed from the ordinary cases in which executors or trustees had sought a construction of a will in order to protect them against the claims of devisees or legatees under the will or heirs-at-law or next of kin of the testator, for it appears that the children of testator, who are executors with his widow, and who have joined with her in this bill, are the sole heirs-at-law and next of kin of testator. There is no pretence that any of them entertain or have expressed any discordant or antagonistic views as to the proper construction of the first sub-

division of the clause in question. If the claim they make in their bill is correct, and the disposition of the $100,000 made thereby is ineffective and void, that sum must be distributed among them, either under the provisions of the second subdivision of the same clause or as property undisposed of by the will. Upon the face of the case it seemed that the executors and trustees were seeking a judicial interpretation of the will to protect them against themselves, for if they chose to obey the literal directions of the clause in question, no person other than themselves could complain.

But upon further consideration, and in view of the fact that the clause, the interpretation of which is sought, seems to indicate that the testator intended to devote the $100,000 to charitable uses in which the public would have an interest, and that the question presented is whether he has expressed that intent in an effective manner, it was deemed best to retain the bill, and to direct that the attorney-general, as representing the public, should be brought into the case.

Proper amendments to the bill were thereupon made, and the former attorney-general appeared and filed a formal answer. The cause was again placed on the list, and has been brought to hearing on briefs submitted by complainants' counsel and by the present attorney-general.

It is the undoubted law of this state that such a testamentary disposition of property as that now under consideration cannot be sustained except upon the theory that it constitutes a gift to a charitable use. Whether it is a gift of that character or not is to be determined by the language used by testator to express his intention in the particular clause in question, read with any other portions of the will tending to throw light upon and indicate the meaning of the words used. *Thompson's Executors* v. *Norris, 4 C. E. Gr. 308; S. C., 5 C. E. Gr. 489; De Camp* v. *Dobbins, 2 Stew. Eq. 56; S. C., 4 Stew. Eq. 672.* It is equally well settled that a gift to a charitable use will not fail of effect because the donor has not pointed out the particular beneficiaries to whom he designs his bounty to go, provided that he has endowed some person with express or implied power to select such beneficiaries.

The power to dispense the fund carries with it by implication the power to select. *Hesketh* v. *Murphy, 8 Stew. Eq. 23; S. C., 9 Stew. Eq. 304; Norcross* v. *Murphy, 17 Stew. Eq. 522; N. Y., &c., Society* v. *Clarkson, 4 Halst. Ch. 541; McBride* v. *Elmer's Executors, 2 Halst. Ch. 107; Jones* v. *Watford, 17 Dick. Ch. Rep. 339.*

It is apparently conceded in the argument that if testator by this clause had directed the executors to devote the $100,000 to charitable or religious purposes, the gift would be good as a charitable use, and the power to select the particular charities or the particular churches or societies organized for the spread of religion would have been, by implication, conferred upon the executors.

But the contention is twofold—(1) that by the inclusion of "educational" purposes as those to which the trustees might devote the fund, they are permitted to dispose of it for other than charitable uses, and (2) that by the like inclusion of "other" purposes the executors may dispose of it for purposes not charitable.

With respect to the first contention, it seems to me to be lacking in force. While the act of parliament of *43 Eliz. c. 4,* commonly called the statute of charitable uses, has been held never to have been in force in this state, yet it seems admitted that the extensive jurisdiction of the English court of chancery over charities—a jurisdiction which this court possesses in its full extent (*Hesketh* v. *Murphy, ubi supra*)—is over the classes of objects enumerated in the preamble of that act. Among those objects education is included. *2 Story Eq. Jur. § 1160; 5 Am. & Eng. Encycl. L. (2d ed.) 929.* Gifts for educational purposes have been upheld in this state as to valid charitable uses. *McBride* v. *Elmer's Executors, 2 Halst. Ch. 107; Stevens* v. *Shippen, 1 Stew. Eq. 487; Mason's Executors* v. *Trustees, &c., 12 C. E. Gr. 47; George* v. *Braddock, 18 Stew. Eq. 757.*

But the serious difficulty in this case arises from the other contention on the part of complainants, viz., that the clause in question confers a power upon the executors unlimited to charitable uses, by making use of the words "or other" to express some of the purposes permitted.

These words cannot be construed as intended to be read "other such" or "other like" or "other of the same kind," for such a construction would make them mere surplusage and deprive the clause of meaning. If so construed, the words simply repeat the idea "charitable" previously expressed, for there are other charitable purposes than those which are educational or religious, such as the care of the poor, the sick, &c. But those purposes are naturally included in the expression "charitable purposes." Therefore, when the testator adds the words "or other," the clause, looked at by itself, clearly expresses the intent to permit the trustees to devote the fund, if they choose to do so, to purposes other than those which are educational or religious or charitable. This view requires a declaration that the gift is void.

That the words "or other" came into the will by interlineation after the will was drafted and before its execution can have no bearing on the case. Testator's will is that which he executed, and is to be read and construed in the state in which it was executed.

It was declared by Chief-Justice Beasley, speaking for the court of errors in *Hesketh* v. *Murphy, supra,* that it was an acknowledged doctrine that on all matters of construction, courts are bound to lean in favor of charity rather than against it. Where the language of the testator, standing alone, requires a construction which would make void and ineffective the gift, it may, when read with other language of the will, be found to be restricted from its natural meaning, and confined within limits which effectuate the gift. A comparison of the meaning attributed by the court of errors to the word "benevolent," as used in the will considered in *Thompson's Executors* v. *Norris,* and the same words as used in the will considered in *De Camp* v. *Dobbins,* afford a striking example.

An examination of the whole will seems to give some countenance to the contention of the attorney-general that the word "other" was used by the testator in a restricted sense and was limited to charitable purposes other than educational or religious. The subdivision of the clause in question contains an ex-

press proviso that no part of the $100,000 should be "given to or distributed among his wife and children, individually or collectively." But if the contention of the parties prevails, the whole sum must go to and be distributed among them. It is not the case of a mere inference drawn from a testamentary provision that testator did not intend to die intestate, but a positive prohibition against the parties being benefited by his gift, and the contention is that the language used by testator to indicate his intended benefaction must be limited to that which is effective, viz., a charitable use.

But, upon reflection, I am unable to yield to this contention. If testator's purpose may be considered to have been to devote the $100,000 to charitable uses he has not used apt language to express such purpose. On the contrary, he has permitted it to be devoted to "other" purposes. The express direction that the trustees should devote no part of it to themselves or any of themselves seems rather to indicate that he consciously placed this limit upon them in their performance of his directions for its distribution for other purposes than those which were charitable, for it is unreasonable to suppose that he contemplated that, within the period of five years, his widow and children, to whom the whole residue of his estate was given, would be in need of charity, or that he proposed to prevent their relief from his bounty if they became necessitous.

The result is that the first subdivision of the clause in question must be declared to be inoperative, and the sum therein mentioned will go to the widow and children of deceased. As the second subdivision of the clause provides for the disposition of the residue in the manner in which testator's estate would have been distributed if he had died intestate, it is unnecessary to determine whether the sum thus ineffectively dealt with becomes part of the residue, or should be distributed as property undisposed of by the will.