BENNET VAN SYCKEL, surviving executor, &c., et al.,

*v.*

WILLIAM JOHNSON et al., trustees.

[Decided August 13th, 1908.]

By a codicil to his will testator gave to his executors $6,000, in trust, to be invested and the interest to be applied to keeping in good repair and condition that part of the graveyard attached to a certain church wherein his family were buried, also the rest of the graveyard; and if the church should fail to make up the salary of the pastor the balance of the interest or so much as necessary should go toward the salary.— *Held*, that the entire bequest is void because it includes an object of charity, that is, a contribution toward the salary of the pastor of a church, which is a good bequest, and an object not charitable, that is, a provision for keeping a graveyard in order, which is void as a perpetuity, and, the gift being indivisible, the whole is bad for uncertainty.

On bill for construction of will. Heard on bill and proofs taken *ex parte.*

*Mr. Paul A. Queen* and *Mr. Bennet Van Syckel,* for the complainants.

WALKER, V. C.

This bill was filed by the surviving executor and trustee under the will and codicil of the late Aaron Van Syckel, and by other persons beneficially interested in the estate of the testator as residuary legatees, for the construction of the second codicil to the testator's will, and for direction as to the distribution of the trust fund therein created, in case that provision of the codicil shall be held to be invalid. So much of the codicil as is pertinent to this inquiry reads as follows:

"*Second.* I give and bequeath to my Executors or the survivors or survivor of them, the sum of Six Thousand Dollars in trust nevertheless, that they or the survivors or survivor of them will invest the sum, either in good Rail Road securities or good and sufficient Bond and Mortgage

on Real Estate as in their judgment they may think best, and pay the interest accruing thereon annually, first to keeping up in good repair and condition, that part of the graveyard attached to the Bethlehem Baptist Church where my family are buried; Second to keeping up in good condition and repair the rest of said grave yard; Third if said Baptist Church shall fail to make up the Salary of the Pastor of said Church, that then and in that case the balance of said interest, or so much of it as is necessary shall go towards making up the Salary of said Pastor; and in case the balance of said interest shall be more than is necessary for that purpose, then the balance of said interest remaining, after the payment of the said Salary, shall be added to the fund of Six Thousand Dollars from year to year, and the interest arising from such fund shall be appropriated and invested as is hereinbefore directed: the said several sums to be paid by my Executors, or the survivors or survivor of them, either to the persons entitled to receive the same, or to the Trustees or Trustee of said Church, as they shall think proper, and the receipt of the person or persons entitled to receive said interest, or the receipt of the said Trustees, or any one of them shall be a sufficient voucher for the same. And in case the said Baptist Church shall go down, or there shall be no regular Baptist Church service held in that place, then, after keeping the said graveyard in condition and repair as aforesaid, the balance of said interest shall be divided as I have directed the residue of my estate to be divided in my said will to which this is a Codicil; and in case both Church and grave yard, shall go down and become extinct, then it is my will and I do order and direct that the whole sum of Six Thousand Dollars with whatever additions may have been made thereto, shall revert, and go back, and be considered as part of my estate, and be divided as the residue of my estate is ordered to be divided by said will, to which this is a Codicil."

The defendants are the trustees of the Bethlehem Baptist Church and also those residuary legatees under the testator's will who are not complainants in the cause. None of the defendants answered and the bill was taken as confessed, to the end that such decree might be made as the chancellor should think equitable and just.

The cause was brought on for hearing by the complainants *ex parte,* and two of the defendants, Daniel Johnson and William E. Johnson, trustees of the Bethlehem Baptist Church, were examined as witnesses. They testified that David Beers, the other trustee who was made a defendant, was not a member of the church, having taken his letter and joined another church; that there were formerly five trustees, but the others have not acted for four or five years, the last election being held about six years ago; that there were about forty-five members scattered through

a farming community; that the last meeting of the board was held five or six years ago; that they have had no regular pastor since the spring of 1904, after which time they procured a supply, who preached every two weeks until the fall of that year (1904), since which time they were without a pastor or any services until the summer of 1907; that during the month of July (1907) they arranged with a pastor for preaching every two weeks in the afternoon of Sundays, at no stated salary, but whatever they could afford to pay; that on August 18th, 1907; the members extended the supply pastor a call, no salary being fixed and he accepted and was to preach Sunday afternoons every two weeks, but he has not been paid for the reason that they have not had funds wherewith to pay him; that the graveyard is in good shape having been taken care of by some one other than the trustees, in fact by one of the Van Syckel family, but not out of the fund in question; that they have no regular sexton; that the woodwork of the church, a stone one, has not been painted for about fifty years; that what work has been done to the fences has been done by the Van Syckel family; that without the income from the trust fund they cannot run the church, there not being people of sufficient means (members or not members) to do it, and very little money can be raised; that they are desirous of keeping up the church, but cannot do so without the aid of the fund for the reason that without its aid the pastor preaching every two weeks will leave, as they cannot raise sufficient moneys to pay him; that other churches have been built (in the vicinity, presumably), and members have moved away and died since the raising of the trust fund by the late Mr. Van Syckel, leaving the church in question in a weak condition.'

It is not necessary to decide whether, within the meaning of the codicil, the church has gone down, or that there are no regular Baptist church services held there, so that after keeping the graveyard in condition and repair, the balance of interest, arising from the fund, may be divided as the testator directed concerning the distribution of his residuary estate; or whether both the church and graveyard have gone down and become extinct so that the whole of the trust fund with its additions, if any, shall revert to and be considered a part of the estate of the testator to

be divided as provided for the disposition of his residuary estate, because, in my judgment, the bequest is void as a perpetuity.

In *Hartson* v. *Elden, 50 N. J. Eq.* (*5 Dick.*) *522,* ·Chancellor McGill held, that a provision by a testator that the interest of a certain portion of his estate should be used to keep in repair the grave of his wife and himself and that the remainder of the interest should be employed in the general improvement of the cemetery were void under the rule against perpetuities, because neither trust was for a public charity, which ordinarily is not within the rule referred to, for the trusts under consideration extended no farther than the establishment, preservation and improvement of private property. To the same effect is *Corle's Case, 61 N. J. Eq.* (*16 Dick.*) *409,* in which Vice-Chancellor Reed held, that a gift by a testator to his executor of a certain sum to apply the interest in keeping his burial lot in good order and any surplus remaining to be used to repair fences around the graveyard was void as an attempt to create a perpetuity, being neither a charitable bequest nor a gift to a cemetery association under *Gen. Stat. p. 531 § 14.*

It will be noticed that the bequest under consideration is not only for the keeping of graves in condition and repair, which is not a charitable use, but also to be applied toward the payment of the salary of the pastor of the church if the church shall fail to make up the salary of the pastor. This is a gift for the maintenance of religious services and is undoubtedly a charity, and, therefore, not subject to the rule against perpetuities (*Mills* v. *Davison, 54 N. J. Eq.* (*9 Dick.*) *659*) ; but, there is here a mixing of charitable uses with objects not charitable, and it is therefore void. *Thomson's Executors* v. *Norris, 20 N. J. Eq.* (*5 C. E. Gr.*) *489.*

In *DeCamp* v. *Dobbins, 31 N. J. Eq.* (*4 Stew.*) *671,* a trust to a church to aid the missionary, educational and benevolent enterprises to which the church was in the habit of contributing was upheld only because it was shown that the enterprises referred to were legal charities. Chief-Justice Beasley, who delivered the opinion of the court of errors and appeals, remarking (at *p. 694*) :

"It is urged that this entire trust cannot be said to be chari-

table, within the legal signification of that term, inasmuch as the word 'benevolent,' by its natural force, takes in objects and purposes that are not charities. That this term has this latitudinarian meaning, was, upon full consideration, decided by this court in the case of *Norris* v. *Thomson's Executors, 5 C. E. Gr. 489.* That exposition went on the ground of the intrinsic meaning, and the unchecked form, of the term, for on that occasion it was considered that there was nothing present tending to hem in or narrow its import."

And (at *p. 696*) :

"It appears in the case, by the proofs, that this church has been in the habit of making donations to certain enterprises and objects, such as the foreign and domestic missions, the bible society, &c., all of which enterprises are charities in the legal sense of the term. When, therefore, this will declares the trust, and directs the property to be used 'to aid the missionary, educational and benevolent enterprises to which the said church is in the habit of contributing,' the will itself provides a standard by which the word 'benevolent' is to be measured. The fund is not to be used to aid any benevolent enterprise, but only benevolent enterprises of a certain defined character, and they are charities. The word 'benevolent' is thus, by the context and the subject-matter, cut down into legal dimensions. From the first, I have seen no difficulty on this point."

Like the trust which was held bad in *Thomson's Executors* v. *Norris, 20 N. J. Eq. (5 C. E. Gr.) 489,* the trust in this case is for purposes charitable and not charitable, and, therefore, the bequest is bad for uncertainty.

When an unascertainable part of a fund is given upon a void trust and the residue upon a valid trust, the whole fails. *Kelly* v. *Nichols, 17 R. I. 306; affirmed, S. C., 18 R. I. 62.*

A deliverance precisely in point is that of the supreme court of errors of Connecticut in *Coit* v. *Comstock, 51 Conn. 352,* in which the court held that bequests to two ecclesiastical societies to be invested as a permanent fund, and the income so far as necessary to be applied in keeping certain burial lots in order, and the remainder to religious services in the societies, was void, remarking (at *p. 386*) :

"But the bequests as they are, although some portion of the income is to be devoted to a charitable purpose, cannot be supported. If it were otherwise it would be in the power of an individual to make a perpetuity of property to any extent, by devoting some small portion of the undivided income thereof to some charitable purpose. A little charity, in such a case, cannot preserve the entire bequest."

There will be a decree declaring the codicil to the will of the late Aaron Van Syckel to be null and void, and that the trust fund raised by the codicil be distributed as the residue of the decedent's estate is ordered to be divided by his will. As the proofs show the amount in the hands of Judge Van Syckel, the surviving executor, the decree to be entered in conformity with these views may ascertain the exact amount distributable.