DAVID W. DOAN

*v.*

WINFIELD C. JONES et al.

[Submitted May 14th, 1916.   Determined July 11th, 1916.]

1. A fraternal order, organized as a voluntary association and afterwards incorporated, and the incorporation later dissolved, is not after the dissolution revived as a voluntary association.

2. Under the facts in this case—*Held,* the call issued for the organization of a new grand body was sufficient and such grand body was properly organized.

3. Under the facts in this case—*Held,* that whether the state organization was a corporation or not, the organization of the new grand body was authorized as essential to the purpose of the order.

On final hearing on bill for injunction and relief.

*Mr. John F. Harned,* for the complainant.

*Mr. Oscar B. Redrow,* for the defendants.

LEAMING, V. C.

The present controversy is to determine which of two organizations is entitled to enjoy the rights, privileges and property heretofore in the undisputed enjoyment of one body. Each of the two contending organizations claims to be presently entitled to exclusively enjoy the rights which prior to October 30th, 1914, were enjoyed by a beneficial society known as the Grand Circle of New Jersey, Brotherhood of America. On that date certain proceedings were taken at a special meeting of that body under and by virtue of which defendants claim that the organization which they then perfected and now maintain of the same name and general purpose as the old organization is entitled to exercise and enjoy the rights, privileges and property theretofore enjoyed and exercised by the old organization, and that the old body then ceased to exist as a distinct organization. Complainants contend that the proceedings then taken were irregular and ineffectual to accomplish that result and that the old organization still survives with its rights unimpaired; in that view the present bill has been filed in behalf of the old organization for the procurement of a decree confirming its status and restoring its rights.

No adequate consideration can be had of the effect of the action taken at the special meeting of October 30th, 1914, without reference to the conditions existing prior to and at that time.

The Brotherhood of America consisted of three separate classes of interdependent organizations, namely, a supreme body, known as the Supreme Circle; state organizations, known as Grand Circles, and various subordinate circles or lodges in the several states. An examination of the official literature of these several organizations discloses a complete interdependence of these three classes of bodies. The Supreme Circle is defined in its by-laws as "the fountain head of the order," with exclusive jurisdiction over the ritual, regalia, emblems and forms of cere-

monies, and with power to alter or amend them; with power to grant what in lodge nomenclature is known as "charters" for grand bodies and suspend such charters for cause, and to suspend subordinate circles for violation of laws of the Supreme Circle; also to hear appeals from actions of grand bodies. The membership of the Supreme Circle was composed of its elective officers and representatives sent from the several grand circles in numbers based on membership, and persons who had become the chief officers of grand circles: The general revenues of the Supreme Circle have been from charter fees, copies of ritual, paraphernalia and supplies and from a *per capita* tax paid by grand circles. Two treasury funds have been maintained by it— a general fund and death benefit fund—and some of the officers of the Supreme Circle have been paid in part from each of these funds. The latter fund was in the nature of insurance of lives of members of subordinate circles. A member of a subordinate lodge became a member of this fund and paid dues to the Supreme Circle for the benefit of the insurance. The several grand circles have had jurisdiction over their various subordinate circles, with power to grant charters to subordinate circles and revoke, arrest or suspend them for cause, and hear and determine all grievances, subject to appeal. Its membership has been composed of members of the subordinate circles who have attained a certain degree and of representatives elected by the several subordinate circles within its jurisdiction. Its revenues have been derived from fees charged for charters to subordinate circles and a *per capita* tax from each subordinate circle and charges for paraphernalia and supplies furnished. The grand circles also have had a membership-at-large fund for sick benefits, which fund has been supported by dues from members of subordinate circles whose lodge charters have been surrendered. Subordinate circles are individual lodges supported by dues of members; sick and disability benefits are paid to members from the funds of the circle to which they belong.

This brief outline of the principal governmental and monetary features of the order, without any consideration of its social aims and purposes, sufficiently discloses the extent of the interdependence of the three classes of bodies. In general, the grand

bodies have been governmentally subordinate to the supreme body and the subordinate lodges to the grand bodies, but in some instances the supreme body has been privileged to exercise direct control of the subordinate lodges. Pecuniarily, each body has had its obligations to individual members of subordinate circles. Subordinate lodges supply sick and disability benefits to their members; grand bodies supplied like benefits to certain members of the order; the supreme body has heretofore supplied death benefits to members of individual subordinate lodges. Without allegiance of subordinate lodges there could be neither grand nor supreme bodies, because there could be no complete membership; without grand bodies there could be no supreme body in harmony with the general plan of work; without a supreme body the "fountain head," as it is called, would be lost. That body, though essentially representative, has been in practical operation the source of all power and authority in the order. With its exclusive jurisdiction over the ritual, and its power to create and dissolve grand bodies, its existence is obviously a necessity to the pursuance of the general scheme of society organization along the established lines.

In the year 1896 the Supreme Circle became incorporated in this state under the name of the Supreme Circle, Brotherhood of the Union, pursuant to the provisions of the act of April 9th, 1875, for the incorporation of benevolent and charitable associations. The act of 1875 was repealed by the act of April 21st, 1898, entitled "An act to incorporate associations not for pecuniary profit," so far as the provisions of the former act were repugnant to the latter, but rights of corporations under the former act were preserved, and provision was made for corporations under the former act to adopt the latter act. *1 Comp. Stat. p. 125.* In 1905, the Supreme Circle adopted the provisions of the act of 1898, and at the same time changed its name to "The Supreme Circle, Brotherhood of America."

In September, 1914, proceedings for dissolution were instituted by the Supreme Circle under section 11 of the act of 1898 (*1 Comp. Stat. p. 128*), and on September 14th, 1914, a certificate of dissolution was issued by the secretary of state. Thereafter a receiver in insolvency was appointed by this court,

who is now administering the Supreme Circle assets for the benefit of its creditors. This dissolution of the Supreme Circle corporation was admittedly occasioned by the circumstance that it had found it impossible to longer successfully administer its life benefit fund without certain amendments to its by-laws, which proposed amendments the courts of this state had held to be violative of the contractual rights of certain dissenting members who held insurance payable from that fund. When the Supreme Circle was dissolved the officers and some of the members of the Grand Circle were advised that the dissolution, in its practical force, was operative as a dissolution of the grand and subordinate circles, and that for the preservation of the subordinate bodies forming the Grand Circle, it was necessary for the Grand Circle to take appropriate action to meet the new conditions brought about by the dissolution of the supreme body. The committee of ways and means of the Grand Circle then met and formulated plans for the purpose stated, to be presented to a special meeting of the Grand Circle to be called for that purpose. The plans recommended by that committee were for the officers and some of the members of the Grand Circle to form a corporation under the act of 1898, heretofore referred to, under the name of "Brotherhood of America," and then have the Grand Circle, at a special meeting to be called for that purpose, adopt or declare allegiance ·to the new corporation, and then adopt new temporary by-laws for the guidance of the Grand Circle until such time as new permanent by-laws should be adopted. These new by-laws recommended by the committee for the future guidance of the Grand Circle were in general in harmony with its previous by-laws and included a provision that except as therein noted the laws and usages governing the former Grand Circle should remain in force with the words "Supreme Circle" and all references thereto eliminated. In general, the plan proposed was to reorganize with like officers and rules and aims as theretofore, but wholly independent of the old Supreme Circle, and in that manner continue its existence as the representative body of the several subordinate lodges, to the end that the work of the brotherhood could be perpetuated in this state and the subordinate lodges be thus saved from un-

necessary injury by the loss of the supreme body. Pursuant to the recommendation of the ways and means committee, a special meeting of the Grand Circle was called for October 30th, 1914. At that meeting thirty-one circles were represented and six were not represented. The testimony, as I now recall it, is to the effect that these six circles which were not represented have since approved of the proceedings which were adopted at the meeting. At this special meeting the recommendations of the committee, as already set forth, were followed. The first proceeding was the adoption of a resolution which had been prepared by the committee. That resolution was as follows:

"WHEREAS, The Supreme Circle, B. of A., at its special session held at Camden, September 26th, 1914, by a vote of 98 yeas and 14 nays, dissolved itself and all grand and subordinate circles; and whereas, the board of officers and others, members of Grand Circle, B. of A. of New Jersey, learning from counsel of the legality of the dissolution of the late Grand Circle, and for the purpose of perpetuating the brotherhood which for over sixty-five years had been in active operation in our state, and also to conserve the best interests of those who desired to still carry on the work of brotherhood, did, on the 1st of October, 1914, apply for incorporation as the Grand Circle, Brotherhood of America, with all the rights and privileges appertaining thereto, which act of incorporation has been granted by the state; now, therefore, be it resolved, That this meeting ratify and endorse the action of the board of officers and others, and accept the act of incorporation as a charter, and form now by thus accepting the said act of incorporation a new Grand Circle, Brotherhood of America of New Jersey, by the election of a board of officers as the legal and duly authorized officers of the new organization."

This resolution was adopted by a vote of seventy-one to forty-one. The dissenting members then withdrew and officers of the new body were then elected and the new by-laws as recommended by the ways and means committee were adopted. This organization has since been maintained and is exercising jurisdiction as the Grand Circle of this state over most of the subordinate circles in this state and is recognized by those circles as such. At its annual meeting, on September 6th, 1915, thirty-four subordinate circles were represented.

Claiming the proceedings taken at the special meeting to be irregular, representatives of eight circles met on the date on which the annual meeting would have been held but for the

proceedings taken at the special meeting and elected officers for the succeeding year. In consequence, these two organized bodies each now claim to be entitled to exercise the privileges and functions of the Grand Circle in this state.

The claim is made by complainant in behalf of what may be styled for convenience the old Grand Circle that the proceedings at the special session of that circle were irregular and inoperative to accomplish either the result intended or effect any change in that body.

It is claimed that the statutory dissolution of the Supreme Circle in no way impaired its status as the supreme body of the order; that the effect of the dissolution was merely a surrender of its statutory charter and a return to its former status as a voluntary unincorporated association; that its dissolution and insolvency and receivership in no way severed the allegiance due to its authority from the grand and subordinate bodies of this state, and in no way necessitated or justified a reorganization of those bodies or any readjustment of plans for their future work. Acting upon that assumption the Supreme Circle, after its dissolution, became incorporated in the State of Pennsylvania and now claims allegiance from all New Jersey bodies. What has been styled the old Grand Circle, with its few constituent bodies, recognizes that present allegiance; the new, or reorganized Grand Circle, with its constituent bodies, denies allegiance to this Pennsylvania Supreme Circle. That condition is the underlying spirit and moving cause of the present controversy; in form, the controversy involves only the respective rights of the two contending grand circle organizations as against each other.

I am unable to reach the conclusion that the statutory dissolution of the Supreme Circle was in its effect and consequences a mere "surrender of its charter" and without vital effect upon the relation theretofore existing between it and the Grand Circle and subordinate bodies in this state. The Supreme Circle, by the terms of our statute (*1 Comp. Stat. p. 126 § 3*), was "a body politic and corporate" with the several powers specifically enumerated in the act. The proceedings of dissolution were taken under section 11 of the act. *1 Comp. Stat. p. 128.* That section specifically sets forth the proceedings to be taken to dis-

solve the corporation and declares that when such proceedings have been taken and a certificate of dissolution shall have been issued from the office of the secretary of state, the corporation shall be dissolved, but that no distribution of assets of the corporation shall be made until its debts have been fully satisfied, and that no property shall be diverted from any trust created by the donor or grantor. I think it impossible to contemplate this section as meaning less than its language specifically declares, namely, a dissolution of the corporation, or to regard such dissolution in its effects and consequences differently from a dissolution of any other corporation. At dissolution the organization necessarily ceases to exist for all purposes except that of winding up its affairs for the purpose of paying its debts and distributing its assets, and the dissolution section specifically forbids such distribution until the debts are fully satisfied. The idea that at dissolution the former voluntary unincorporated association automatically comes into being with its former rights, powers and privileges as such reinstated and unimpaired except as to its assets seems to me to be wholly inconsistent, not only with the terms of our statute, but with any adequate conception of the effect of incorporation and the force of dissolution.

My attention has been called to an opinion filed by the supreme court of Pennsylvania in the case of *Shriner* v. *Sachs,* not yet officially reported. It appears by that opinion that a Pennsylvania subordinate circle of the same order by a majority vote transferred its allegiance to this reorganized New Jersey Grand Circle and based its action upon the dissolution of the Supreme Circle. The opinion recognizes that right of the subordinate circle provided the Supreme Circle were dissolved and not revived by its reincorporation in Pennsylvania, but holds that the dissolution of the Supreme Circle was a mere "surrender of its charter," and that its subsequent incorporation in Pennsylvania re-established its position as the supreme body of the order. The high respect in which the decisions of that court are justly held almost impels the adoption of the views there expressed; but as the very foundation of the decision is a New Jersey statute which is neither referred to nor in any way considered,

it would seem that the terms of the statute may not have been brought to the attention of the court. Whether the New Jersey statute was in fact offered in evidence in that case does not appear.

I am unable to escape the conclusion that the statutory dissolution of the Supreme Circle was operative to leave the Grand Circle without an authoritative head and that the dissolution so far impaired the general plan of organized operation as to call for and fully justify some plan of reorganization of the Grand Circle looking to a preservation and continuance of the work of the order.

It is further claimed by complainant that the call of the special meeting of the Grand Circle inadequately expressed the purpose of the meeting.

The by-laws of the Grand Circle provide that calls of special sessions of that body shall specifically state the reasons for the call and that no business shall be transacted at a special session other than that for which the session was called. The call was as follows:

"Having received a petition signed by the constitutional number of Exalted Washingtons requesting me to call a special session of the Grand Circle for the purpose of taking action toward the protection of the subordinate bodies comprising the Grand Circle brought about by the dissolution of the Supreme Circle, Brotherhood of America, I hereby grant the petition and call upon all officers, Exalted Washingtons and representatives to convene in special sessions in Morgan's Hall, corner 4th and Market, 3d floor, Camden, N. J., on Friday, October 30, 1914, at 10 A. M."

I think the call adequate to support the action taken. The members were reasonably apprised that the purpose of the meeting was to take whatever action they should determine upon as necessary for the protection of the subordinate bodies so far as that necessity arose from the dissolution of the Supreme Circle. It was for these members, when assembled, to determine upon the necessary and appropriate measures to be taken.

Nor am I able to conclude that the measures which were taken were not necessary and appropriate to protect and perpetuate the subordinate bodies in view of the dissolution of the supreme body. The measures taken were, in effect, a declaration of inde-

pendence from the dissolved Supreme Circle and allegiance to the new corporation which had been formed prior to the meeting. A reorganization was then effected by the election of new officers and the adoption of by-laws similar to the old, but eliminating all references to the Supreme Circle. The resolutions which were adopted in terms make reference to the "old" and "new" grand circles. It seems immaterial whether the proceedings be regarded as effecting a reorganization or a new succeeding organization. A reorganization or readjustment of the plan of work had become necessary by a destruction of one of the three interdependent branches of the order, and the aim and purpose of the proceedings which were taken were the adoption of measures to enable the order to continue its activity in this state without the necessity of supervision or control of the old Supreme Circle.

Objection is also made that some of the ritualistic ceremonies were not observed at this special meeting. It is alleged that the charter from the Supreme Circle to the Grand Circle was not spread upon the altar of the lodge room and that the pass word was not taken up. The former allegation appears to be established. The reason suggested is that the supreme body had dissolved. The evidence is in conflict as to whether customary practices were observed touching the pass word. The fact appears to be that the pass word was ordered to be taken up, but that the officers performing that duty did not require it to be given by certain members whom they well knew to be entitled to be present. That practice appears by the evidence to conform to the customary usage of that body.

The bill alleges that the Grand Circle at the time of the special meeting was a voluntary association and the answer admits that averment. The amended bill alleges that the Grand Circle had prior to that time become incorporated, and the amended answer admits that averment. The proofs establish that in 1877 the Grand Circle became incorporated under the act of April 9th, 1875, by the name of "the Grand Circle, B. U. H. F. of New Jersey." Subsequently, the Supreme Circle changed its name from Supreme Circle, Brotherhood of the Union, to Supreme Circle, Brotherhood of America, and the

Grand Circle has since been uniformly recognized under a like modified name, but no change of name has ever been formally adopted. It thus appears that the Grand Circle was an incorporated body at the time of the special meeting in question. This is referred to here by reason of the claim now made by complainant that as a corporate body the Grand Circle could not adopt a new corporate charter in the manner set forth in the resolution which was adopted at the special meeting. In response to this claim it is pointed out that the act of 1898 (*1 Comp. Stat. p. 127 § 5*) authorizes corporations under the act of 1875 to become incorporated under the act of 1898 in the same manner as though unincorporated. I think it unnecessary to consider here whether the proceedings which were taken at the special session were operative to constitute the Grand Circle a corporation under the act of 1898 or whether its corporate existence continued under the act of 1875. The proceedings which were taken were made necessary by the new conditions which had arisen and were intended to accomplish, and, in my judgment, were adequate to accomplish, a reorganization of the Grand Circle in such manner that the mutual relation between it and its subordinate bodies could continue unimpaired and the work of the order could be preserved and fostered without the existence of the former Supreme Circle as the fountain head and supreme governing body. In practical operation that result appears to have been accomplished, and, in my judgment, the means adopted were lawful and appropriate to that end and fully justified by the conditions which had arisen. The general plan or scheme of the order had been interrupted or disrupted in such manner as to render the readjustment a necessity.

My conclusion is that the rights asserted by complainant have not been established with that certainty which would justify this court in denying to the reorganized Grand Circle the right to continue its work along the lines now pursued.

I will, accordingly, advise a decree dismissing the bill.