William O. Allison died December 18th, 1924, leaving a will dated July 11th, 1924, admitted to probate in the prerogative *Page 573 
court. The will is as follows, its pertinent paragraphs being quoted in full:
"I. It is my desire and intention to dispose by gift of a large part of my remaining estate for the purpose of pleasing Almighty God, benefiting my fellow-man and as far as possible developing that section of the Palisades along the Hudson, located in the borough of Englewood Cliffs and vicinity.
"II. I nominate, constitute and appoint Harry J. Schnell and Frank V. Baldwin and the survivor of them, to be the executors of this my last will and testament and the trustees of the trusts hereinafter created."
Paragraphs 3 to 9, inclusive, provide for the payment of debts, for bequests to five persons amounting to a total of $28,750, and for an annuity of $25 per month, all friends and employes. Paragraph 9 states that no provision is made for his wife, children or grandchildren, because he has made other adequate provision for them.
"XI. All the rest, residue and remainder of my property, real and personal, whatsoever and wheresoever situate, not hereinbefore specifically bequeathed, I give and devise and bequeath unto my said trustees, in trust nevertheless, to maintain and develop in accordance with my known wishes, the Palisades along the Hudson, in the borough of Englewood Cliffs and vicinity. I am now formulating more definitely, plans for the development and maintenance of said Palisades, and to that end have requested two prominent residents of the city of Englewood to submit to me a plan for such development and maintenance. If such plan is submitted and receives my approval, then I direct my trustees to use this trust fund for the purpose of carrying out such plan. If, however, such plan does not receive my approval, then I order and direct my said trustees to use this trust fund for the development and maintenance of said Palisades section in accordance with my wishes as expressed to them."
The twelfth and final paragraph gives the executors and trustees power to sell real property.
The disposition of the testator's residuary estate is attacked by his widow and children (whom I shall hereafter designate as complainants) as invalid on the ground that the purpose or terms of the trust is not disclosed by the will, and that said trust is not charitable and is in violation of the rule against perpetuities. *Page 574 
Evidence was given on behalf of the trustees to show that the expressions used in the will was not intended to confine or limit the trustees to any plan or method for the maintenance and development of the Palisades which the testator might have expressed to them, and to show that the testator's intention was to require his trustees to develop the Palisades for the benefit of the public, in furtherance of wishes which he had expressed generally, and which he also expressed in the first paragraph of his will. Such evidence was received over objection from the complainants and subject to their motion to strike out. I am now convinced it was inadmissible and cannot be considered.
The gift in question to be valid as not opposed to the rule against perpetuities must be shown to be for a charitable purpose only, which purpose must be found within the will itself from the language therein employed by the testator. Extrinsic evidence of the circumstances, situation and surroundings of the testator may be considered for the purpose of placing the court in the situation of the testator, and thus enable the court to understand the meaning of doubtful or ambiguous expressions used by him, but no proof can be considered to supply an omitted description or designation of the person to whom or object to which the testamentary gift is to apply. The determination of whether the gift is for a charitable purpose or object depends upon the intention of the testator if it can be found in the will, and if it cannot be found there, the deficiency cannot be supplied by the testimony of persons who attempt to give their recollection, understanding or interpretation of what the testator said to them. Griscom v. Evens, 40 N.J. Law 402;affirmed, 42 N.J. Law 579; Farnum v. Pennsylvania Co., 87 N.J. Eq. 108; affirmed, 87 N.J. Eq. 652.
Admissible evidence was given which shows that the testator's estate, above the amount required to pay the legacies, exceeds $3,000,000, and includes all the stock of a land company which holds title to some twenty-six separate and unconnected tracts of land along and below the Palisades in an area extending along the west side of the Hudson river, approximately six miles. *Page 575 
If the testator had some idea for preserving and developing the Palisades for the benefit of the public, or believed that he could in some way benefit the public through the use of his residuary estate in connection with such preservation and development, he certainly was not clear in his own mind how he could put his idea into practical effect.
In the eleventh paragraph of his will he said, first, that his gift was to his trustees to develop the Palisades in accordance with his known wishes, and then he went on to say that his wishes (or ideas) had not yet matured into definite plans, and that he was seeking the advice of others, and if their advice appealed favorably to him he would make known to his trustees the plans he would formulate upon such advice, and that the trustees should carry out such plans. If, however, no suggested plan met with his approval, then his trustees should use the trust fund for the development and maintenance of the Palisades in accordance with his wishes as expressed to "them." As he had not settled on a plan at the time he executed his will and was then casting about for one, his statement as to his wishes must have had reference to wishes he intended to express to his trustees at a time subsequent to the execution of his will. But if not, and if his trustees were aware of his wishes at or prior to the execution of his will, it was his plan, nebulous though it might be, and not any plan of his trustees, which he desired carried out. The trustees were not to originate plans; their function was limited to the execution of plans communicated to them before or after the execution of the will, or if he had communicated no plan to them, then in accordance with what they might know of his wishes. His plan, whether communicated to his trustees or not, was to form part of the purpose or object he had in mind. A plan was intended to be an essential part of the purpose of his gift.
In the first part of the eleventh paragraph the testator stated that his trustees are to maintain and develop the Palisades "in accordance with my known wishes," which may mean in accordance with his wishes as expressed to persons other than his trustees. He had given some indication of *Page 576 
his wishes to two prominent residents of Englewood, and when, and at the end of the paragraph, he said if these men failed to submit a plan which received his approval, his trustees should develop and maintain the Palisades "in accordance with my wishes as expressed to them," the word "them" may refer to the two Englewood men or to his trustees. In any event, he intended that the trust fund should be used for the development and maintenance of the Palisades according to a special plan or in a specific manner which he had expressed, or proposed to express, to some person or persons and not generally, along any lines which his trustees might deem proper, but since he failed to even indicate in his will what his plans or wishes were, it is impossible for this court to say whether his purpose was charitable, or partly charitable and partly not, and recourse cannot be had to statements which the testator may have made to others to supply or define his intention, because such statements are not part of his will and cannot be made so in the face of the statute, which provides the formalities which must be observed in the execution of a valid will.
But, say the trustees, the first and eleventh paragraphs of the will must be read together, and, being so read, a gift to charity is disclosed. The definition of a charity, as approved by our court of errors and appeals in Mackenzie v. Trustees, c.,67 N.J. Eq. 652, is as follows:
"A charity, in its legal sense, may be more fully defined as a gift to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds and hearts under the influence of education or religion by relieving their bodies from disease, suffering or constraint; by assisting them to establish themselves in life; or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself if it be so described as to show that it is charitable in its nature."
Nothing in the language of paragraph 11, by which the gift is made, describes a gift charitable in its nature. Paragraph *Page 577 
1 is in the nature of a preamble in which the testator endeavored to set forth the desire and intention which moved him in disposing of his estate in the manner afterward specified. He stated his motives as threefold — first, to please Almighty God; second, to benefit his fellow-man, and third, to assist in developing a portion of the Palisades. The first two of these motives may have reference to his bequests to six friends and employes and may have no reference whatever to the Palisades, but all three, or, perhaps, only the first and third, or the third alone, may have been the moving cause for giving his residuary estate to trustees. The desire to please God and the desire to develop the Palisades, taken separately or together, do not disclose an intention to make a gift for charitable purposes. For instance, the testator may have believed that his God created the Palisades, and that it would please Him if he could, in some measure, protect their pristine grandeur from the hand of the vandal by developing and restricting their use to residential purposes only. If his desire to benefit his fellow-man and his desire to develop and maintain the Palisades should be read together, do they disclose a gift necessarily charitable? It will be remembered that the eleventh paragraph is silent as to the purpose or for whose benefit he desired the Palisades developed and maintained, and the first paragraph does not say that it was his desire to benefit his fellow-man by the development and maintenance of the Palisades, but, if such was his desire, it may have been his opinion that his fellow-man would be benefited by a plan or purpose which our courts would not consider charitable.Goodell v. Union Association, 29 N.J. Eq. 32; Livesey v.Jones, 55 N.J. Eq. 204; affirmed, 56 N.J. Eq. 453; Hyde'sExecutors v. Hyde, 64 N.J. Eq. 6; Hegeman's Executors v.Roome, 70 N.J. Eq. 562, and Thomas v. Scheible, 91 N.J. Eq. 451,
are instances where testators have attempted to benefit their fellow-men by gifts which the courts have declared invalid because made in perpetuity for purposes not strictly charitable.
It is settled in this state that if the trust sought to be established can be used for purposes not strictly charitable, or *Page 578 
partly for purposes charitable and party for purposes not strictly charitable, the trust is invalid. Norris v. Thomson,19 N.J. Eq. 307; affirmed, 20 N.J. Eq. 489; Van Syckel v.Johnson, 80 N.J. Eq. 117, and cases last cited. The difficulty here is — first, that the will is indefinite and does not provide generally for the development and maintenance of the Palisades for the benefit of the testator's fellow-man, and leave it to the trustees to devise the details for carrying out a general plan of public benefit, and second, that it does provide for such development and maintenance within certain limitations, namely, according to a plan which the testator had in mind, concerning which he failed to disclose anything from which it can be determined that such plan was, or is, wholly charitable in its nature, and, therefore, the gift must fail. Norcross v.Murphy, 44 N.J. Eq. 522; Smith v. Smith, 54 N.J. Eq. 1;affirmed, 55 N.J. Eq. 821.
The result of my conclusions is that the testator's widow and children are entitled to his residuary estate. The proofs show that they have entered into a written agreement to divide said estate in equal shares among themselves, and the trustees will therefore be decreed to distribute said residue among them in accordance with their agreement.