The Davella Mills Foundation hereinafter referred to as the Foundation was incorporated on March 19th, 1935, under "An act to incorporate associations not for pecuniary profit," P.L. 1898ch. 181, as supplemented, now R.S. 15:1-1 et seq., with the term of corporate existence fixed at twenty years.
The original incorporators were the late David B. Mills, Paul H. Hudson, Howard S. Dodd, Alfred A. Ritchie and Elizabeth G. Keeler. All were named as trustees in the certificate of incorporation and served as follows: David B. Mills until his decease on February 25th, 1944; Elizabeth G. Keeler until her resignation as a member and trustee on December 5th, 1945, and the three remaining trustees have continued to serve to date. Judge Richard Hartshorne was elected a member of the Foundation and a trustee on October 11th, 1944.
The late David B. Mills made a substantial gift inter vivos
to the Foundation in 1935 and a bequest of the residue of his estate in his last will and testament admitted to probate in the Prerogative Court in March, 1944.
David B. Mills died testate on February 25th, 1944. Complainants are cousins once removed of David B. Mills. Complainants are not beneficiaries under his will. Ten years after the date of the inter vivos gift, and two years after testator's death, complainants now attack the charitable gift and bequest in an attempt to establish intestacy. In the alternative they allege that the trustees of the Foundation are not properly administering the fund, and seek the appointment of trustees to administer the fund. *Page 59 
The Attorney-General, who is one of the defendants by virtue of his interest in charities, has been placed by court order in charge and control of those portions of the litigation relating to the public right, and the regulation, control or correction of any charitable trust involved. He has taken the position that the gift and legacy to the Foundation were valid, but for purposes of this litigation, he adopts complainants' charges as to improper administration.
Complainants pray that paragraphs "Second" and "Third" of the decedent's will and the gift to the Foundation in 1935 be declared invalid and void and decedent declared to have died intestate as to the residue of his estate.
The paragraphs of the will under attack read:
"Second: It is my desire that the property of which my estate consists at the time of my death shall be distributed in kind, so far as possible, by my executor to The Davella Mills Foundation, hereinafter mentioned. It is not my intention by this expression of my wishes to limit my executor in the exercise of a sound discretion in conserving the values of my estate during administration, but, except so far as is necessary for the payment of debts and taxes, as above provided, and for conservation of values, I direct my executor to retain the securities and other property which I shall have at the time of my death until they can be turned over in the process or at the end of the administration of the estate to The Davella Mills Foundation in accordance with the provision of paragraph numbered `Third' herein.
"Third: I have already made such gifts to my next of kin, friends and other individuals, for whose future I wish to make provision in some measure, and it is my desire to devote the residue of my estate to charitable purposes and to that end I give, devise and bequeath all the rest, residue and remainder of the property of which I shall die possessed or seized, real, personal and mixed, and wheresoever situated, to The Davella Mills Foundation, a corporation of the State of New Jersey, organized under an Act entitled `An Act to incorporate associations not for pecuniary profit,' to have, hold, administer and distribute the same for the carrying out of any or all of the general charitable purposes set forth in its certificate of incorporation, with full power and authority, within the limits imposed by such certificate of incorporation, of selecting the objects of my bounty; and I do specifically direct that the said corporation may retain the investments left by me and which shall come to said corporation by this my will so long as to them shall seem advisable, within the limits imposed by such certificate of incorporation."
Article II of the certificate of incorporation of the Foundation sets forth the purposes for which it is organized, viz.: *Page 60 
"II. That the purposes for which the corporation is formed are, to receive, hold, care for, invest in and operate real and personal property and to use and distribute from time to time all the income and all principal, as well, which it shall receive in charitable gifts, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing their minds or hearts under the influence of education or religion, or by relieving their bodies from disease, suffering or constraint, or by assisting them to establish themselves in life; or by erecting or maintaining public buildings or works; or by otherwise lessening the burdens of government. Such funds may be used and distributed for all of said purposes, or for any one or more within or without the State of New Jersey. It is the intent and purpose that the said corporation shall be organized and operated exclusively for religious, charitable, scientific, or educational purposes, within the classification of legal charities and no part of the net earnings nor of the principal shall inure to the benefit of any private shareholder or individual and no substantial part of the activities of such corporation, or of any recipient of its funds, shall be to carry on propaganda or otherwise to attempt to influence legislation."
On May 31st, 1935, the testator, by a deed of gift, delivered to the residuary legatee, the Foundation, 50,000 shares of the common stock of General Motors Corporation, in trust, for the purposes set forth in the certificate of incorporation of the Foundation.
The residuary estate, among other things, consists of an additional 53,000 shares of the common stock of General Motors Corporation. As a result of the gift and residuary bequest, the said Foundation now has assets of more than $6,000,000.
Complainants contend that paragraphs "Second" and "Third" of the will are invalid because the bequest is not charitable; is uncertain and indefinite; that there is no one to enforce it; that it is not being administered according to law; that it gives an unlawful delegation of authority to select the objects of testator's bounty, and violates the rule against perpetuities.
Defining what is a charitable purpose, Mr. Justice Gray inJackson v. Phillips (1867), 96 Mass. 539, 556, said: "A charity, in the legal sense, may be more fully defined as a gift, to be applied consistently with existing laws, for the benefit of an indefinite number of persons, either by bringing *Page 61 
their minds or hearts under the influence of education or religion, by relieving their bodies from disease, suffering or constraint, by assisting them to establish themselves in life, or by erecting or maintaining public buildings or works or otherwise lessening the burdens of government. It is immaterial whether the purpose is called charitable in the gift itself, if it be so described as to show that it is charitable in nature."
Mr. Justice Gray's definition of a charity has been quoted with approval and followed by our Court of Errors and Appeals inMacKenzie v. Trustees of Presbytery of Jersey City, 67 N.J. Eq. 652,665; 61 Atl. Rep. 1027, and Noice v. Schnell,101 N.J. Eq. 252, 259; 137 Atl. Rep. 582.
And Chancellor Runyon in Hesketh v. Murphy, 35 N.J. Eq. 23
(at p. 27), quoting Lord Hardwicke, "Where * * * testators have not any particular person in their contemplation, but leave it to the discretion of a trustee to choose out the objects, though such person is private, and each particular object may be said to be private, yet in the extensiveness of the benefit accruing from them they may very properly be called public charities. * * *." Such a gift at its inception must be general, that is, for an indefinite number of persons, but it is equally clear that it must be in such terms that the specific objects or beneficiaries may eventually be selected and for this an agency must be selected or created by the testator. Holmes v. AmericanSociety, c., Animals, 123 N.J. Eq. 127; 196 Atl. Rep. 718. To these requirements the gift under discussion conforms. The Foundation was selected to choose the objects.
"* * * At the outset, in determining whether or not the provisions of the will creating these trusts are valid, certain fixed principles should be kept in mind; that the courts start out with an attitude in favor of the attempt to create a charitable trust, rather than with a hostile attitude toward that attempt, and that were the rule otherwise, an attempt to create a charitable trust would often fail to survive; that the intention of the donor is of great importance in determining the character of the trust; and that it is immaterial whether the gift is called charitable in the will *Page 62 
itself, the real question being the effect and result of the trust. The question is not what the testator desired to accomplish by the trust, but what in the opinion of the court will be the result of the trust upon the community and society in general. The court should and generally does direct its attention merely to the question whether the net result of the trust in operation will be to advance the religious, educational, eleemosynary, governmental, or other charitable interests of the community and thus to produce the social advantage required for the charitable trust. Charity is necessarily altruistic, and involves the idea of aid or benefit to others; but, given the latter, the motive impelling it is immaterial. If the intention be charity, the court will execute it, however vaguely the donor may have indicated his purpose. Vagueness is to be found in almost every charitable trust. Courts of equity uphold gifts for a charitable purpose if there is a trustee with power to designate the particular persons to be benefited thereby, even though the will is vague as to the designated cestui que trust
or, in other words, that a gift to a charitable use will not fail of effect because the donor has not pointed out the particular beneficiaries to whom his bounty is to go, provided he has endowed some person with express or implied power to select such beneficiaries. The power to dispense the fund carries with it the implication of power to select. While money or money's worth may go to certain individuals under a charitable trust, it does not go for the purpose of mere enrichment, but rather to produce a desirable social effect. The effect and result of the trust is that which is stressed in determining its validity. A court of equity, in construing a charitable trust, should lend its aid in attaining that end rather than let it fail because of doubt as to the means described by the testator. * * *." Woodstown NationalBank, c., Co. v. Snelbaker, 136 N.J. Eq. 62; 40 Atl. Rep.
2d 222.
Nor is the gift to the agency (the Foundation) uncertain or indefinite because the purposes and powers are specified in its certificate of incorporation. De Camp v. Dobbins, 31 N.J. Eq. 671.
The act (chapter 181, P.L. 1898) under which the Foundation *Page 63 
was incorporated provided that five or more persons may incorporate "for any lawful purpose other than for pecuniary profit." The twelfth section of the act provides that "no corporation, association or society authorized by this act and having no capital stock shall be organized under any other act." That provision appears in the Revised Statutes, 1935, assection 15:1-22 which, however, excepts from its scope "religious societies" which may be incorporated under "Title 16." The thirteenth section of chapter 181, laws of 1898, repealed all inconsistent laws. By chapter 76 of the laws of 1899 (p.191) the act to incorporate benevolent and charitable associations, approved April 9th, 1875, and the several supplements to it were specifically repealed and that it has been repealed was recognized in Doan v. Jones, 87 N.J. Eq. 61, 64;99 Atl. Rep. 192.
And R.S. 15:14-6 provides that: "Every corporation of this state organized for religious, educational, charitable or benevolent purposes under the provisions of any act of the legislature of this state, general, special or private, is hereby authorized to take and hold by purchase, gift, devise, bequest or otherwise, for any religious, educational, charitable or benevolent purposes whatsoever, such real or personal property, or both, as such corporation may require, or as, in any manner, may have been or may be vested in such corporations for any or all of such purposes, and to grant, bargain, sell or convey the same; and every such corporation is further authorized to take and hold in trust for any religious, educational, charitable or benevolent purposes whatsoever, such real or personal property, or both, as, in any manner, may have been or may be given, granted, conveyed, bequeathed or devised to, or otherwise vested in such corporation in trust for any of said purposes, and to grant, bargain, sell and convey property so held or to be held in trust for any such purposes, in accordance with the terms of the gift, grant, conveyance, bequest, devise or instrument creating such trust or trusts, respectively."
It thus appears that not only was it lawful to incorporate the Foundation for the lawful purposes specified in its charter under the chapter 181 of laws of 1898, but that such was *Page 64 
the only act under which it could have been incorporated for those purposes.
Neither is generality in the terms of a charitable gift objectionable if the instrument of gift appoints some agent or agency to make a selection of the beneficiaries. Hyde'sExecutors v. Hyde, 64 N.J. Eq. 6; 53 Atl. Rep. 593; Hilliard
v. Parker, 76 N.J. Eq. 447; 74 Atl. Rep. 447; Vineland TrustCo. v. Westendorf, 86 N.J. Eq. 343; 98 Atl. Rep. 314; Thomson'sExecutors v. Norris, 20 N.J. Eq. 489; De Camp v. Dobbins,supra; King v. Rockwell, 93 N.J. Eq. 46; 115 Atl. Rep. 40.
Here the gift is to the Foundation as a corporation "to have, hold, administer and distribute the same for the carrying out of any or all of the general charitable purposes set forth in its certificate of incorporation, with full power and authority, within the limits imposed by such certificate of incorporation, of selecting the objects of my bounty."
As to the charge that the trust violates the rule against perpetuities suffice it to say that gifts to charitable uses are within an exception to the rule against perpetuities. Mills v.Davison, 54 N.J. Eq. 659; 35 Atl. Rep. 1027; Van Syckel v.Johnson, 80 N.J. Eq. 117; 70 Atl. Rep. 657; Bernardsville M.E.Church v. Seney, 85 N.J. Eq. 271; 96 Atl. Rep. 388; Young Men'sChristian Association v. Appleby, 97 N.J. Eq. 95;127 Atl. Rep. 25; First Camden, c., Trust Co. v. Collins, 110 N.J. Eq. 623;160 Atl. Rep. 848; Redmond v. New Jersey Historical Society,129 N.J. Eq. 57; 18 Atl. Rep. 2d 275; MacKenzie v.Trustees of Presbytery of Jersey City, supra.
It is concluded that the gift is charitable, certain and definite; that there is someone to enforce it; that the delegation of authority to the Foundation to select the objects of testator's bounty is a lawful delegation; that the Foundation is incorporated under an act intended to embrace such activities as are provided for in its certificate; that the corporation has the power and is given authority by its charter and by the will to make the selections of the beneficiaries to receive the gift, and that the rule against perpetuities does not apply. *Page 65 
Next the complainants charge that a grant of $300,000, made by the Foundation in 1945 for the purpose of incorporating and financing the International Film Foundation, Inc., is a grant for a non-charitable use, and is more "scientific," than "educational," or "charitable."
The certificate of incorporation of the Film Foundation offered in evidence states the primary purposes of the Film Foundation as follows:
"(a) To help maintain world peace and to promote better understanding between peoples of different nations, races and religions; to increase within the United States knowledge of other countries and their peoples, including knowledge of their culture, customs, economic and social life, geography, history, institutions, political organizations, religion, resources, and the like; to increase without the United States similar knowledge with respect to the United States and its peoples; generally to present and interpret other nations and peoples to the American people and to present and interpret the American people to other nations and peoples; to do these things primarily through the production, and distribution of still and motion pictures, and also by means of lectures, radio and television, publications, theatrical performances, expeditions or other means that from time to time may appear to the Corporation appropriate and be permitted by law;
"(b) To prepare for production or publication and to produce or publish, to manufacture and distribute, buy, sell or lease, directly or indirectly, such still and motion pictures, books, magazines, pamphlets, publications of all kinds, radio programs, television programs and the like as may be necessary, suitable or convenient for carrying out any of the purposes of the Corporation;
"(c) To arrange for public or private lectures by members or employees of the Corporation, or others, illustrated by still or motion pictures or not illustrated, appropriate for carrying out any of the purposes of the Corporation; * * *."
The maintenance of world peace by the promotion of better understanding between peoples of different religions, races, and nations, the aim of the Film Foundation as manifested by its charter is manifestly a "charitable purpose" within the letter and spirit of our authorities.
The definition of a public charity given by Horace Binney in his argument before the Supreme Court of the United States in theGirard Will case and adopted by the court in its opinion inVidal v. Girard, 43 U.S. 127; 11 L.Ed. 205, was quoted with approval by our own Court of Errors and *Page 66 
Appeals in Noice v. Schnell, supra, "Whatever is given for the love of God or for the love of your neighbor in the catholic and universal sense — given from these motives and to these ends — free from the stain or taint of every consideration that is personal, private or selfish." Certainly a purpose to maintain world peace by promoting better understanding through educating its peoples by means of motion pictures, television or otherwise, is a purpose "the accomplishment of which is beneficial to the community," and one which includes "the advancement of education," and given "for the love of your neighbor in the catholic and universal sense."
Charities have been upheld for the purpose of spreading the light on social and political liberty and justice in these United States (George v. Braddock, 45 N.J. Eq. 757;18 Atl. Rep. 881); for the purchase of books upon the philosophy of spiritualism (Jones v. Watford, 62 N.J. Eq. 339;50 Atl. Rep. 180; affirmed on this phase, 64 N.J. Eq. 785;53 Atl. Rep. 397); the furtherance of the broadest interpretation of metaphysical thought (Vineland Trust Co. v. Westendorf, supra;affirmed, 87 N.J. Eq. 675; 103 Atl. Rep. 1054).
The Film Foundation is a charitable corporation not for pecuniary profit. The answer to the charge that its director, Mr. Bryan is paid a salary of $20,000 a year, is that this Foundation is a separate corporate entity, with the administration of which charity the defendants are not chargeable. In passing it should however be noted that no proof was offered by the complainants that Mr. Bryan is not fulfilling capably the duties assigned to him.
The Commissioner of Internal Revenue in considering the nature of the Film Foundation has concluded that it is a charitable and a non-profit organization, and has ruled, as appears by his letter in evidence, that contributions made to it are deductible by donors in computing estate, gift, and income taxes.
Moreover complainants also had actual notice of the accounting proceedings by the executors in the Prerogative Court and actually appeared by counsel at the time of an application for counsel fees and commissions in connection *Page 67 
with the accounting. The decree is therefore binding on them, not only as to any claims which they may have against the executors but also as to those which they might assert against the Foundation as distributee. Adams v. Adams, 46 N.J. Eq. 298;19 Atl. Rep. 14; Riddle v. Cella, 128 N.J. Eq. 4; 15 Atl. Rep.
2d 59; First National Bank, c., Montclair v. Chandler,133 N.J. Eq. 335; 32 Atl. Rep. 2d 455.
While the Prerogative Court has limited jurisdiction to construe a will and determine the validity and effect of its provisions, it is settled that it has such power in connection with its primary jurisdiction in a proceeding for accounting or distribution of a testate estate. Baker's Estate, 61 N.J. Eq. 592; 47 Atl. Rep. 1046; Easton v. Goodwin, 119 N.J. Eq. 114;181 Atl. Rep. 275; Riddle v. Cella, supra; First National Bank,c., Montclair v. Chandler, supra; Hill v. Bloom, 41 N.J. Eq. 273; 7 Atl. Rep. 437. Complainants had a standing to challenge the validity of the inter vivos gift and the bequest to the Foundation in the proceedings before the Prerogative Court on the intermediate accounting. City Bank and Farmers Trust Co. v.McCarter, 111 N.J. Eq. 315; 162 Atl. Rep. 274; Van Buren v.Plainfield Trust Co., 130 N.J. Eq. 244; 22 Atl. Rep. 2d189.
Further, the claim of complainants of improper administration of the charitable gift (which claim is here not established) would not cause a forfeiture or give rise to a reverter if established. It is well settled that where a valid charitable gift is made, or a valid charitable trust created, that there is no forfeiture or reverter in favor of the donor or his next of kin or heirs by reason of improper administration of the gift or trust. Cuthbert v. McNeil, 103 N.J. Eq. 184;142 Atl. Rep. 667; affirmed, per curiam, 104 N.J. Eq. 495; 146 Atl. Rep. 881.
Decree will be advised in accordance with the foregoing conclusions. *Page 68